## CASE OF THE UNUSED TAG.

### *In re* AH KEE.

*(Circuit Court, D. California.* September 22, 1884.)

1. CHINESE IMMIGRATION — CUSTOM-HOUSE TAG — CERTIFICATE — ACTS OF 1882 AND 1884.

   A Chinese laborer, in September, 1883, went back to China, after obtaining from the custom-house officer a "tag" entitling him to the certificate required by the act of 1882, but without procuring the certificate itself, and in August, 1884, returned to the United States and sought to land by virtue of his "tag." *Held*, that the act of 1884, which declares that the certificate issued to the laborer should be the only evidence permissible to establish his right to re-enter the United States, was as applicable to the certificate issued under the act of 1882, as to a certificate issued under the act of 1884, and that he was not entitled to re-enter.

2. SAME — REMOVAL OF CHINAMAN UNLAWFULLY RETURNED — DUTY OF STEAM-SHIP COMPANY.

   The acts of congress, both original and amendatory, contemplate that parties unlawfully bringing here Chinese laborers prohibited from landing shall take them back to the country from which they are brought, or, at least, beyond the jurisdiction of the United States; and a steam-ship company cannot escape from this duty by the departure of the vessel on which they are brought, or any change in its officers or management.

   Per FIELD, Justice.

3. SAME — HABEAS CORPUS — RELEASE OF CHINAMAN ON BAIL — DEPARTURE OF VESSEL — REMANDING TO MASTER ON RETURN OF VESSEL — REFUSAL OF MASTER TO RECEIVE HIM — PENALTIES.

   When, on proceedings by *habeas corpus* to test the right of a Chinese laborer to re-enter the United States, his body is produced in court, the court may order that he continue in the custody of the party detaining him, or commit

him to the custody of the marshal, or release him on bail to await a decision of the question, and when he has been released on bail he is still deemed in the custody of the law, and as never having been landed; and if, before final decision, the vessel on which he was brought departs on its regular trip, when she returns he may be remanded to the master, whether he is the one who produced him or another, and a refusal to receive him when so remanded would constitute an aiding and abetting or permitting the landing of a person unlawfully, within the provisions of sections 1 and 2 of the restriction act, and both the master and the ship under his command would incur the penalties pronounced by sections 10, 11, and 12 of the act.

Per SAWYER, J.

On *Habeas Corpus.*

*T. D. Riordan* and *L. I. Mowry,* for petitioner.

*S. G. Hilborn* and *Carroll Cook,* for the United States.

FIELD, Justice. The petitioner is a Chinese laborer and a subject of the emperor of China. He resided in the United States on the seventeenth of November, 1880, and until September 3, 1883. He then went back to China without the certificate required under the restriction act of 1882, which would have enabled him to return to this country. Previous to his departure he applied to the collector of customs at the port of San Francisco for such certificate, and, as he alleges, the provisions of the law for the registration of a description of his occupation, residence, and age, and of the physical marks and peculiarities necessary to his identification were complied with by the collector, and from him the petitioner received a white tag, which entitled him to the desired certificate. The act of congress appears to contemplate the presence of the collector in person, or by deputy, on board of a vessel cleared or about to sail to a foreign port with Chinese laborers, and his making while on the vessel a list of them, with the particulars mentioned of each one for his identification, such particulars to be entered in proper books to be kept for that purpose. To carry out these provisions on board of the vessel was found to be impracticable. Passengers are not generally expected or even allowed to be on board of a vessel many hours before its departure, and the time consumed in the examination of each laborer, if such examination were had on board, would necessarily greatly limit the number to whom a certificate could be furnished,—a small portion of those who would desire to depart by each vessel of the line of steamers now plying between this port and China. To obviate the delays which would otherwise arise, the officers of customs at San Francisco have prescribed rules requiring Chinese laborers intending to leave and yet desirous of returning to the United States to attend at the custom-house in advance of the departure of the vessel, and undergo the preparatory examination. That being satisfactory, a white tag is given to the laborer, in exchange for which a certificate is issued to him on board of the steamer. These regulations are designed to facilitate the departure of laborers without unnecessary delay on board of the vessel, and, being reasonable, may properly be insisted upon. The essential requirement of the law is the registry of the par-

ticulars respecting each laborer, so as to identify him. The place where the examination is had is not an indispensable part of the requirement.

The petitioner having, as he alleges, secured his white tag, went aboard of the steamer City of Pekin, at San Francisco, when about to depart for China, expecting there to receive in exchange for it a certificate entitling him to return, and was informed that the officer charged to deliver such certificate had already been aboard of the vessel and left. The petitioner accordingly went among his countrymen on the vessel, without further inquiry for the officer, and left without his certificate. In August, 1884, he returned to the port of San Francisco in the steam-ship City of New York, and sought to land by virtue of his tag, which he presented to the collector. Upon examination of the records in the collector's office it appeared that the certificate intended for him had been presented by another person, who had arrived on a previous steamer, and by virtue of it had been allowed to land. The certificate was, upon such landing, canceled. The petitioner was accordingly not allowed by the collector to land, and he now seeks to secure a right to land from the court.

It is by no means clear that the petitioner would not have found the officer having his certificate had proper inquiry been made. His willingness to depart without effort for that purpose tends to create a suspicion as to his conduct. But assuming that there was no purpose to facilitate the use of the certificate by another, whilst he retained the tag, no relief can be afforded him on this application.

The restriction act of May 6, 1882, suspended after 90 days from its passage, and for the period of 10 years from its date, the right of Chinese laborers to come to the United States, or, if already come, to remain unless they were within the United States on the seventeenth of November, 1880, or should come before the expiration of 90 days after the passage of the act. For the purpose of identifying the laborers in the United States on the seventeenth of November, or coming within the 90 days mentioned, and in order to furnish them with proper evidence to depart from and return to the United States, the act provided that a certificate, as already described, after registration of the particulars mentioned, should be issued to the laborer; and the amendatory act of 1884 declares that "said certificate shall be the only evidence permissible to establish his right of re-entry." This declaration is as applicable to the certificate issued under the act of 1882, as to that issued under the act of 1884. In the face of its clear and emphatic direction, nothing can be taken as an equivalent or substitute for the certificate. It matters not that the petitioner was entitled to have a certificate from the collector. If he has not got it, the court cannot help him. That is the "only evidence permissible," says the statute, and the court has no power to dispense with its requirement in any case, however great its hardship. The court is itself but the servant of the law, and equally bound with

others to follow and obey it. If the collector refuses to the Chinese laborer any rights to which, under the restriction act, he is entitled, he should apply to the superior of the collector at Washington, the head of the treasury department, for proper instructions to him. The court has no supervising jurisdiction over the manner in which he discharges his duty.

· The writ must therefore be discharged and the petitioner be remanded. If, as stated by counsel, the vessel on which the petitioner arrived has left the port of San Francisco since his arrival, the marshal can place him on any other vessel of the steam-ship company, when it is about to depart for China, to be deported, and for the expenses attending the charge of the party and his removal the company will be liable. Act of 1884, § 12. The acts of congress, both original and amendatory, contemplate that parties unlawfully bringing here laborers prohibited from landing, shall take them back to the country from which they are brought, or at least beyond the jurisdiction of the United States; and the steam-ship company cannot escape from this duty by the departure of the vessel on which they are brought, or any change in its officers or management.

Writ dismissed and petitioner remanded.

SAWYER, J. On the argument of this case before myself and the district judge we were both satisfied that the petitioner was not entitled to land on the presentation to the deputy collector of his preliminary white tag, delivered to him at the custom-house as evidence of his right to the proper certificate, accompanied by the explanation given of his failure to produce the certificate required by the act, and the other evidence, satisfactory if admissible, produced of his residence in San Francisco at the date of the treaty of November 17, 1880; and we were prepared to decide that he must be remanded to the custody of the master of the steam-ship on which he arrived, to be transported to China, whence he came.

We held, in the case of *In re Leong Yick Dew*, 19 FED. REP. 490, that under the act of 1882, in force at the date of his departure, the prescribed certificate is the only evidence upon which a Chinese laborer, to whom the provisions of section 4 are applicable, can be permitted to land. The same ruling was made by the district judge in the case of *In re Shong Toon*, 21 FED. REP. 386. Under the amendatory act of 1884, if that act were applicable, the certificate prescribed in section 4 of the act is in express terms made the only evidence upon which a Chinese laborer, to whom the provisions of that section are applicable, is authorized to be landed. The language is not open to any other possible construction. Such was the view, generally expressed, taken by us in the case of *In re Ah Quan*, 21 FED. REP. 182.

The petitioner in this case was, undoubtedly, entitled to his certificate, but he was negligent in not procuring it. It was his own

fault that he departed without it. At all events, whether he was negligent or not, the law prescribes this certificate as the only evidence of his right to re-enter the country, and we are not authorized to dispense with it on the grounds set up, or any other. If he did not obtain his certificate, it was not the fault of the law. The certificate is made by the statute the only admissible evidence of a right to re-enter the United States. If, from his own failure to pursue the mode prescribed by the statute, and reasonable regulations made by the collector for the purpose of facilitating the performance of the duties imposed upon him by law in relation to departing Chinese, a party fails to obtain the prescribed certificate; or if, for any reason, the officers appointed to execute the law either rightfully or wrongfully refuse to furnish the certificate, this affords no ground for the courts to dispense with it. No dispensing power has been conferred upon the courts. The fault is not with the law, in such cases, but with the party himself, or in the administration of the law by the duly-appointed officers, and the remedy, in either case, is not to be found in any dispensing power in the courts. The courts must administer the law as they find it, however severe in its requirements, and they are not authorized to amend or abrogate it. If the law works hardship in particular cases, the remedy must be sought elsewhere. While this was our view, the question is one of international importance, and there being no appeal to the supreme court, where such questions should be determined, and a justice of that court, having jurisdiction to determine the question in the circuit court, being daily expected, we deemed it but just and proper that the question should be reargued and resubmitted for our joint consideration and decision. Our own views, it was thought, might possibly be modified by consultation and further discussion, or, in case of a difference of opinion, the question involved, of so great importance, might then be brought before the highest tribunal of the land on a certificate of opposition of opinion, and thus be authoritatively and finally determined. Upon such further argument and consideration we are fully confirmed in the correctness of the conclusion before reached, and we therefore concur in the order remanding the petitioner.

It has been suggested that the steam-ship has departed, and the question has arisen and been fully argued as to what shall be done with the petitioner in that case. Section 9 of the act requires the collector of the port, or his deputy, to go on board steam-ships from foreign ports having on board Chinese passengers, examine such passengers, and compare the required certificates produced with his list and with the passengers. And it then provides that "no passenger shall be allowed to land in the United States from such vessel in violation of law." They are to remain on the vessel, to be carried away from the country, and the master who should permit, or aid and abet, the unlawful landing of one of such persons would be guilty of the offense created by the statute. In obedience to the determi-

nation of the collector in this case, the master refused to permit the petitioner to land, and, this detention being claimed to be unlawful, a writ of *habeas corpus* was sued out to have the question as to whether the detention is lawful or unlawful judicially determined. This is a right which the law of the land gives him. The number of this class of cases is such that it is found impossible, in practice, to determine all the cases before the departure of the steamer, and it becomes necessary, in such cases, to take the petitioner into the custody of the court, otherwise he would be carried beyond its jurisdiction pending the proceeding, and his petition be thus rendered of no avail. When the body is produced in court the petitioner is, for the time being, in the custody of the law, and he can be temporarily committed to the custody of the party producing him, if deemed safe to do so, or committed to the custody of the marshal, or admitted to bail, until the lawfulness of the detention can be inquired into and determined. In such case, when the steamer is about to regularly depart on its duly appointed voyage, and a party so confined is produced on a writ of *habeas corpus* and admitted to bail, or committed to the custody of the marshal pending the investigation, although *actually* on shore he is only *provisionally* so, and he has not, in contemplation of law, been landed, but only held in the custody of the law till it can be determined whether or not he is entitled to land. When that question has been determined against the petitioner, I have no doubt of the power of the court to remand him on board the ship to the custody of the master, whether it be the same master or another who has in the mean time taken his place; and, if the ship has departed pending the proceeding, that the petitioner can be detained by the marshal, by the order of court, till the return of the ship, to be then placed on board by the marshal in the custody of the master, and that it is the duty of the master to receive him, and not thereafter to permit him to land. In such case the party has only been provisionally taken from the ship out of the custody of the master, who detains him in his character *as master* controlling the ship, and not in his individual personal character. He is taken into the custody of the law solely for the purpose of securing his discharge in case his detention proves to be unlawful. He has not, in contemplation of law, been landed at all; he is still under control.

It has been suggested that the master might refuse to receive him after his departure and subsequent return to port. So he might refuse to receive him before his departure. But in either event, as the petitioner has been only provisionally in the custody of the law, and not landed in contemplation of law, such refusal would, in my judgment, constitute an aiding and abetting or permitting the landing of a person not lawfully entitled to enter the United States, within the meaning of the provisions of sections 1 and 2 of the restriction act, and both the master so aiding and abetting or permitting the unlawful landing, and the ship under his command, would incur the

penalties denounced by sections 10, 11, and 12 of said act. The vessel—the instrument, or the *res*—employed in unlawfully bringing the party into the United States, as well as its master, is held responsible as a participant in the unlawful act. In case it is made to appear, by the return of the marshal, that the vessel has departed, I have no doubt of the authority of the court, under the provisions of section 12 of the act, by its writ or order, to empower the marshal to remove the petitioner remanded to the country whence he came, by any other vessel conveniently available for the purpose, at the expense of the United States, as being a person "found to be one not lawfully entitled to be or remain in the United States." The direction contained in the statute, "cause to be removed," involves the power to use the necessary means to accomplish the required object. We so substantially held in *In re Chon Goo Pooi*. And the district judge also so held in the case of *In re Chin Ah Sooey*, 21 FED. REP. 393. This power existing in the court, I can perceive no good reason why the order remanding the petitioner may not, in the first instance, be in the alternative, commanding the marshal to return him to the custody of the master of the vessel on which he came, and, in case it shall be found by the marshal that the vessel is gone, that he place him on board on the return of the vessel; or, on the direction of the court, that he remove him to the country whence he came, upon any other vessel conveniently available for the purpose, at the expense of the United States, to be afterwards recovered from the parties liable therefor under the statute.

In my judgment, the petitioner must be remanded, and in case it shall prove to be impracticable to return him on board the vessel on which he came, by reason of the departure and probable non-return of the vessel at an early day, that the marshal be directed to return him to China, whence he came, on some other vessel available for the purpose, at the expense of the United States, which expense may be recovered, under section 12, from the parties responsible for bringing him hither.