UNITED STATES v. SEABURY.

(District Court, N. D. California. December 30, 1904.)

No. 4,152.

1. ALIENS—CHINESE PERSONS—LANDING.

The transfer of a Chinese person from the vessel in which he was brought to the United States to a detention shed maintained by the owners of the vessel on their dock, where he was detained under guard pending determination of his right to enter the United States, did not constitute a "landing" of such person within Act Cong. May 6, 1882, c. 126, § 2, 22 Stat. 59, as amended by Act July 5, 1884, c. 220, 23 Stat. 115 [U. S. Comp. St. 1901, p. 1306], prohibiting the master of any vessel from knowingly landing or permitting to be landed any Chinese laborer, etc.

2. SAME—ESCAPE—VESSELS—LIABILITY OF MASTER.

Where a Chinese laborer escaped from the custody of the master of the vessel in which he was brought to a port of the United States, after being transferred to a detention shed pending determination of his right to enter, without the permission, connivance, knowledge, or negligence of such master, the latter was not guilty of knowingly permitting such Chinese person to land in the United States, within Act Cong. May 6, 1882, c. 126, § 2, 22 Stat. 59, as amended by Act July 5, 1884, c. 220, 23 Stat. 115 [U. S. Comp. St. 1901, p. 1306].

Marshall B. Woodworth, U. S. Atty.

J. E. Foulds, for defendant.

DE HAVEN, District Judge. The indictment in this case charges the defendant with the crime of knowingly bringing within the United States, on a vessel of which he was master, three Chinese laborers, and permitting them to be landed in the United States, in violation of section 2 of the act of May 6, 1882, c. 126, 22 Stat. 59, as amended by the act of July 5, 1884, c. 220, 23 Stat. 115 [U. S. Comp. St. 1901, p. 1306]. The section is as follows:

"Sec. 2. That the master of any vessel who shall knowingly bring within the United States on such vessel, and land, or attempt to land, or permit to be landed any Chinese laborer, from any foreign port or place, shall be.

deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine of not more than five hundred dollars for each and every such Chinese laborer so brought, and may also be imprisoned for a term not exceeding one year."

The defendant waived his right to be tried by a jury, and the question of his guilt or innocence was submitted to the court for determination, upon the following agreed statement of facts:

"(1) That on the 12th day of November, 1900, and at all of the times hereinafter mentioned, the defendant, W. B. Seabury, was the master of the steamship China, a vessel owned by the Pacific Mail Steamship Company, and plying between the port of Hongkong, in the Empire of China, and the port of San Francisco, in the state and Northern District of California; that the port of San Francisco was at all of the times herein mentioned the terminal point of the voyage of the steamship China.

"(2) That said defendant, W. B. Seabury, as master of the China, on the said 12th day of November, A. D. 1900, knowingly brought to the port of San Francisco, in the state and Northern District of California, on said vessel from the port of Hongkong, in the Empire of China, three certain Chinese laborers, named Yee Wing, Yee Que, and Yee Kone Chong, respectively.

"(3) That said Yee Wing, Yee Que, and Yee Kone Chong were not, nor was either or any of them, members of any of the classes of Chinese persons who were permitted by the laws of the United States to enter or remain within the United States; that said Yee Wing, Yee Que, and Yee Kone Chong had not, nor had either or any of them, established or proved their right to enter and to be landed in the United States as members of any of the classes of Chinese persons who were permitted by law to enter or remain therein, to the satisfaction of any person, officer, court, or tribunal having jurisdiction to permit them, and each of them, to enter and to be landed within the United States.

"(4) That after the arrival of the said Yee Wing, and after the arrival of the said Yee Que and the said Yee Kone Chong, the Chinese laborers herein mentioned, at said port of San Francisco, on said steamship China, the defendant herein, W. B. Seabury, caused and permitted the said Yee Wing, and the said Yee Que, and the said Yee Kone Chong, and each of them, by and with the express permission of the collector of customs at the port of San Francisco, to be taken from said steamship China and placed and detained in a certain shed, building, loft, and inclosure known as and called a 'detention shed' or 'detention loft,' situated upon the Pacific Mail Dock in the city and county of San Francisco; that this shed, building, loft, and inclosure was at all of the times herein mentioned used and employed by said defendant and by the Pacific Mail Steamship Company, by which company the said steamship China was owned, operated, and controlled, by and with the express permission of said collector of customs, and also, after the 6th day of June, 1900, by and with the express permission of the Commissioner General of Immigration, for the detention of Chinese persons brought within the United States at the port of San Francisco from the vessels owned, operated, and controlled by said company, pending the determination and adjudication by the collector of customs at the port of San Francisco of the right of said Chinese persons to enter and remain within the United States.

"(5) That said detention shed or detention loft was erected and owned by the said Pacific Mail Steamship Company, and was employed and maintained by the said Pacific Mail Steamship Company for the convenience of said company in detaining Chinese passengers arriving at the port of San Francisco upon the steamship China and upon the other vessels owned, operated, and controlled by said Pacific Mail Steamship Company, pending the determination of their right to be and remain in the United States as aforesaid; that said Pacific Mail Steamship Company employed and maintained guards and watchmen in said detention shed; that said detention shed was permitted by the Secretary of the Treasury to be used as aforesaid, for the convenience of the masters, owners, agents, and consignees of the vessels aforesaid, and in the interest and for the convenience of commerce and navigation at the port of San Francisco.

"(6) That on November 26, 1900, the said Yee Wing, Yee Que, and Yee Kone Chong, and each and all of them, escaped from said detention shed or detention loft, and landed in the United States at the port of San Francisco.

"(7) That the said Yee Wing, the said Yee Que, and the said Yee Kone Chong have not, nor has either or any of them, been returned to China, the country from which they, and each of them, came.

"(8) That at all of the times hereinbefore mentioned said Pacific Mail Steamship Company and said defendant used reasonable and proper means and precautions to prevent the escape from the detention shed aforementioned of any and all Chinese laborers placed and detained therein, and that none of the Chinese persons escaped therefrom as aforesaid did so escape by or with or by reason of any permission, connivance, knowledge, or negligence on the part of said steamship company or of the defendant herein.

"(9) That none of the escapes of the Chinese laborers herein mentioned occurred by reason of vis major or inevitable accident.

1. The defendant, in causing the Chinese persons named in the indictment to be taken from the steamer of which he was master, and placed in what is termed in the agreed statement of facts the "detention shed," did not land, or permit the landing of, such Chinese persons, within the meaning of the law. The case in this respect is the same in principle as those of Nishimura Ekin v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, In re Ah Kee (C. C.) 21 Fed. 701, and In re Way Tai (C. C.) 96 Fed. 484, in each of which cases it was held that the mere removal of a passenger from the vessel to the shore did not constitute a landing, so long as he was not left free to go at large. It was also so held in United States v. Duffy, tried in this court in the year 1902. The defendant in that case was charged with having aided and abetted the landing in the United States of one Ma Foo, a Chinese person, from a vessel, and it was shown upon the trial that such Chinese person had been removed from the vessel and placed in the detention shed, and thereafter, while in the custody of the defendant, the defendant had knowingly permitted him to go at large. Upon this state of facts the court charged the jury as follows:

"The contention is made that there could be no aiding and abetting the landing of Ma Foo from the Coptic, because Ma Foo had been in what is denominated by the witnesses a 'detention shed.' Upon this point I charge you, gentlemen, that Ma Foo was not landed in the United States so long as he remained in the custody of the company owning the steamship which brought him to this port. He was not landed until he was permitted to go at large in this country, and if he was detained in the detention shed, awaiting the determination of his right either to go in transit across the country or to remain here as a native born, * * * he was not landed within the meaning of the law."

It necessarily follows, from the law as thus stated, that defendant did not violate the statute in placing the Chinese persons referred to in the detention shed, although they may have been placed there for the convenience of the owners of his vessel, pending the determination by the officers of the government of the right of such Chinese persons to enter the United States.

2. The only question that remains for consideration is whether the defendant is criminally responsible for their escape from the detention shed, it being conceded by the agreed statement of facts that he "used reasonable and proper means and precautions" to

prevent their escape, and that none of such persons escaped "with or by reason of any permission, connivance, knowledge, or negligence * * * of the defendant." The case as thus stated is too plain to admit of argument. The statute under which the defendant is prosecuted provides:

"That the master of any vessel, who shall knowingly bring within the United States on such vessel, and land * * * or permit to be landed, any Chinese laborer, * * * shall be deemed guilty of a misdemeanor."

The acts thus made criminal are: First, the voluntary act of the master in landing Chinese laborers in the United States with perfect freedom to go at large; second, expressly permitting them to leave his vessel without restraint, and with the privilege, so far as he is concerned, to go where they will or when he has been guilty of such negligence in the matter of detaining them that an intention to let them go at large can be imputed to him; and there can be no doubt that, to constitute the crime mentioned in this statute, there must be an intentional violation of its provisions by a defendant; that is, it must appear that he has intentionally done that which the law forbids. It is a principle of natural justice, and of universal application, that in every crime there must be a concurrence of act and intent. This principle is so well settled that it has become one of the maxims of the law, and, when applied to the facts appearing in this case, makes but one conclusion possible. The admitted facts show that the defendant did not intentionally do anything which the statute forbids; that he was in no wise responsible for the escape of the Chinese laborers named in the indictment; that he used reasonable and proper means to prevent their escape; and that they escaped without his "permission, connivance, knowledge, or negligence." Upon the facts so admitted, I find that the defendant is not guilty of the offenses charged in the indictment.

Let judgment be entered in accordance with this finding.