ANNIE L. HEBREW, PLAINTIFF IN ERROR, v. PETER E. PULIS ET AL., DEFENDANTS IN ERROR.

Submitted December 12, 1905—Decided June 18, 1906.

1. The essential thing to constitute an imprisonment is constraint of the person, which may be by threats as well as by actual force ; and if the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars.
2. Where a plaintiff in an action for false imprisonment has submitted to the defendant, it is a question for the jury whether the submission was voluntary or brought about by fear that force would be used, unless it is clear that there was no reasonable apprehension of force.
3. An officer who has no warrant for arrest is not justified in compelling a person whom he may suspect of larceny to strip naked for the purpose of a search.

On error to the Supreme Court.

For the plaintiff in error, *Neilson Abeel.*

For the defendants in error, *Cornelius Doremus.*

The opinion of the court was delivered by

SWAYZE, J. This is an action for false imprisonment. A nonsuit was ordered at the trial for the reason that the re-

straint complained of was thought to be due to the voluntary act of the plaintiff.

The facts, as testified to by the plaintiff, are as follows: She was a domestic servant in the employ of Helen Sands and Elizabeth Sands, two of the defendants. Helen had lost a diamond ring. Pulis, the other defendant, known to the plaintiff as a police officer, was called in. In the presence of the Misses Sands he asked the plaintiff if she had the ring; she denied having it. After further talk, Pulis said: "I want you to go upstairs and strip yourself to your hide." What further happened is thus told by the plaintiff: "I said, 'Do you mean to say I have got the ring?' I said, 'I don't know anything about that ring, and you have no right to say so;' and when I said that he said, 'Don't you tell me what you don't know; you do what I tell you;' he said, 'Don't you dare to dictate to me what I have no right to do,' and he shook his finger in my face; and he said, 'We are going to search every piece of clothing you own;' and I went out in the hall, and I said my key is downstairs, to the door, and I went down to get it—went down there and got the key and went back—and then he said, 'You go upstairs and strip yourself to the hide,' and I went upstairs and sat in the rocking-chair, and the three girls stood looking at me, and I was crying, and the detective pulled out everything and looked in the tips of the shoes and the heels, and shook out the stockings, and looked through the bureau drawers and turned everything over; and looked at the letters and opened the pocketbook, and asked me where I got so much money, and he said, 'I am going to find that ring;' and then he says, 'Now, I want you to strip and undress to your hide;' and when he said that, and I was crying still, I said, 'Do you really mean that I have got to undress?' and he said, 'Yes,' and with that he stepped out of the room, and Miss Bessie and Ellie followed him, so then Miss Helen was there, and as I took off everything—I took the long skirt off and let all my other clothes down, and she took up piece by piece and searched it.

"Q. Who searched them?

"*A.* Miss Helen.

"*Q.* Where was Mr. Pulis all this time?

"*A.* Standing outside the door.

"*Q.* How do you know?

"*A.* Because I could hear him; the door was open.

"*Q.* Did you take your shoes and stockings off?

"*A.* I did; and when she had searched everything, she said, 'I have searched everything and I cannot find the ring on her;' and the detective stepped inside the sill of the door, and he said, 'Are you stripped right down to the hide?' and I said, 'Yes, sir;' and then he said, 'All right;' and then he said, 'Yes, you can dress now.'

"*Q.* How long did he stay there in the room after that?

"*A.* He just stayed there long enough to look at me and then said I could dress."

The question presented to us is whether, upon this evidence, it appears so conclusively that the plaintiff's conduct was voluntary, that a jury would not have been justified in finding that she was under constraint. Our view differs from that taken at the trial. The fact that Pulis was a police officer, and known to the plaintiff to be such; that she was confronted not only by him, but by her employers; that she was suspected of larceny, for which the officer might arrest her if he had reasonable ground to believe that the crime had been committed, warranted her in believing that if she failed to submit to Pulis' demand she would be actually arrested. The emphatic language in which the officer commanded her to strip to the hide was calculated to terrorize a girl in her situation, and the very fact that the officer, wholly without right, asserted such authority, and gave such a command, justifies the inference that he and his employers and co-defendants intended to terrorize the plaintiff and to secure the effect of a search without legal process. If it was only intended to secure the consent of the plaintiff to a thorough search, the presence of the police officer was quite unnecessary; the appeal of the Misses Sands would have been as persuasive as the command of the officer but for his seeming authority. We think the case at least presents a

question for the jury, and that the reason given by the learned trial judge is not sufficient to justify his conclusion.

We think, further, that the nonsuit cannot be sustained on any other ground. There is, indeed, no proof that the defendants lay hands on the plaintiff; but that is unnecessary. Whatever doubt may have been thrown upon this question by some of the earlier English cases is now removed by the later authorities. _Grainger_ v. _Hill,_ 4 _Bing. N. C._ 212; _Warner_ v. _Riddiford,_ 4 _C. B._ (_N. S._) 180.

The American cases are to the same effect. _Gold_ ads. _Bissell,_ 1 _Wend._ 210; _Pike_ v. _Hanson,_ 9 _N. H._ 491; _Brushaber_ v. _Stegemann,_ 22 _Mich._ 266; _Johnson_ v. _Tompkins, Baldw._ 571, 601, 602.

The essential thing is the constraint of the person. This constraint may be caused by threats as well as by actual force, and the threats may be by conduct or by words. If the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty as by prison bars. Unless it is clear that there is no reasonable apprehension of force, it is a question for the jury whether the submission was a voluntary act, or brought about by fear that force would be used. No doubt cases may arise where it will be a question of difficulty to determine how far the free will of the plaintiff was overcome, but that determination rests with the jury.

That the imprisonment was without right, and therefore false, must be assumed as the case stood when the nonsuit was ordered. No justification then appeared; the officer was without a warrant, as far as we know. He seems to have been also without reasonable grounds to believe that a felony had been committed, for after the search of the plaintiff's person he was asked what else he would do with her, to which he replied: "I cannot lock her up; she has not got it on her." Upon the plaintiff's case it appears that the defendants themselves recognized that they had at the time no reasonable ground for suspecting the plaintiff of larceny, and that they were then seeking evidence which might give them ground of

suspicion. But even if the case had been such that the officer would have been justified in arresting without a warrant, we think he was not justified in compelling the plaintiff to strip naked. Whether he would have been justified in carrying a search of the person to that point if he had had a warrant is a question not presented. The fact that the officer went to this length might suffice to render him a trespasser *ab initio*. The other defendants stood by and apparently assented to his conduct and took part in the search. They are therefore liable to the same extent as he.

The judgment must be reversed and the record remitted for a new trial.

*For affirmance*—GREEN. 1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GRAY, DILL. 13.