## UNITED STATES ex rel. CARAPA v. CURRAN, Commissioner of Immigration.

(Circuit Court of Appeals, Second Circuit.   March 3, 1924.)

1. **Habeas corpus ⊜⇒45(1)—Federal courts may issue writ only when some federal ground is shown.**
    Before a court of the United States can issue a writ of habeas corpus, it should be made to appear that the application is founded on some matter which justifies the exercise of federal authority.

2. **Habeas corpus ⊜⇒45(4)—Federal court may issue writ to determine legality of detention of alien immigrant.**
    In cases involving deportation of aliens, a District Court of the United States may issue a writ of habeas corpus to determine whether the alien held for deportation as not being entitled to enter or remain in the United States has had a fair hearing under the Immigration Acts.

3. **Habeas corpus ⊜⇒45(4)—"Prisoner" held under federal authority entitled to writ from federal court.**
    Under Rev. St. § 753 (Comp. St. § 1281), any one held in custody by an official of the United States, who restrains him of his liberty in violation of the law of the United States, is a "prisoner," and entitled to sue

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

out a writ of habeas corpus from a federal court to test the legality of his detention.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prisoner.]

**4. Habeas corpus ⬤⇒9—"Imprisonment" defined.**

The term "imprisonment" imports any restraint placed upon one contrary to his wishes and amounting to a physical detention of his person, and it is not necessary that he should be restrained behind prison bars.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Imprison—Imprisonment.]

**5. Habeas corpus ⬤⇒113(8)—Prisoner not entitled to bail pending appeal as matter of right.**

Under rule 33 of the Circuit Courts of Appeals, relating to custody of prisoners on habeas corpus, a prisoner is not entitled as of right to be released on recognizance pending appeal from an order discharging the writ.

**6. Bail ⬤⇒47—Scope of rule providing for release of prisoner on bail.**

Rule 33 of the Circuit Courts of Appeals, in so far as it provides for release of prisoners on bail in habeas corpus proceedings, is within the power of the court as applied to criminal cases in which the prisoner is entitled to be admitted to bail under Rev. St. § 1015 (Comp. St. § 1679), but may not be extended to cases where the court is not authorized to admit to bail.

**7. Aliens ⬤⇒54—Proceedings for deportation are not criminal.**

Proceedings for the deportation of aliens are not criminal proceedings, and an alien who is denied the right to enter or remain in the United States by the immigration officials, and who is detained by them for deportation, is not held for any crime or offense against the United States.

**8. Bail ⬤⇒3—Statute authorizing bail of persons arrested in civil actions does not apply to aliens held for deportation.**

While a person arrested in a civil action may be entitled to bail under Rev. St. § 991 (Comp. St. § 1637), that section applies only to a person arrested or imprisoned on process from a federal court, and has no application to an alien held by the immigration authorities for deportation.

**9. Habeas corpus ⬤⇒25(1)—Alien held for deportation may be taken from custody of immigration officers only on finding that detention is illegal.**

An alien held for deportation by immigration officers may be taken from their custody by a court, on a writ of habeas corpus, only on a determination that his detention is illegal.

**10. Bail ⬤⇒3—Power of federal courts to admit to bail is statutory.**

The power to admit to bail is not one inherent in the courts, and the federal courts have such power only when conferred by statute.

**11. Bail ⬤⇒3—Court is without power to admit an alien, held for deportation, to bail pending appeal from a decree discharging a writ of habeas corpus.**

Neither the District Court nor the Circuit Court of Appeals has power to admit to bail an alien held for deportation by the immigration authorities pending appeal from a decree discharging a writ of habeas corpus.

**12. Words and phrases—"Prisoner" defined.**

Any person is a "prisoner" who is held in confinement against his will.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Calliope Carapa, against Henry H. Curran, Commissioner of Immigration of the Port of New York. On motion of relator to admit to bail. Denied.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Whitestone & Gillin, of New York City, for relator.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for respondent.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. A writ of habeas corpus was obtained in behalf of the relator for the purpose of obtaining the relator's release from the custody of the Commissioner of Immigration of the port of New York and her entry into the United States as an Italian subject. It appears that the relator is a native of the Island of Calymnos and as such applied for admission into the United States. That prior to such application the Lausanne Treaty had been entered into between Italy and Turkey, and that under the terms of that treaty the Island of Calymnos, which up to that time belonged to Turkey, was transferred to Italy. The immigration authorities denied the relator the right to enter this country on the theory that she came from "other Asia" and that the quota was exhausted. The quota from Italy was not exhausted, but as there was no official record in the Departments at Washington showing that the Lausanne Treaty had been ratified by Italy it was thought that she had no right to enter as an Italian. It was contended on her behalf that by virtue of the comity of nations doctrine the United States could take notice of the cession of the Island to Italy and that the alien should be admitted as she came to this country with an Italian passport.

A hearing on a writ of habeas corpus was had in the District Court for the Southern District of New York. It was claimed that the relator had not been given a fair hearing by the immigration officials. The District Court dismissed the writ and remanded her to the custody of the Commissioner of Immigration. An appeal has been taken from the order entered in the District Court and is now pending in this court. The relator by motion has applied to this court for admission to bail pending the determination of the appeal. In applying for admission to bail, it is represented that the relator is ill and is in addition suffering from nervous prostration, and that it may be dangerous to compel her to remain on Ellis Island pending the final disposition of her appeal, and the attention of the court is called to the fact that she has brothers and other relatives within the United States, and that she has been unable to obtain the permission of the Ellis Island authorities allowing an outside physician to make an examination of her.

The Immigration Act provides that any alien who arrives at a port of the United States and is not entitled to land in the opinion of the examining immigrant inspector shall be "detained" for examination in relation thereto by a board of special inquiry. That board has authority to determine whether the alien thus "held" shall be allowed to land or shall be deported. From their decision an appeal may be taken to the Secretary of Labor, and his decision, sustaining an order of deportation, is declared by the act to be final. And all aliens illegally arriving are to be immediately sent back after the fact that they have illegally arrived has been determined. Act of February 5,

1917, St. vol. 39, part 1, c. 29 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.). Pending the final determination of the alien's right to land and the immigration officials' right to deport he is restrained of his liberty. An alien who is held for deportation by the authorities and who has not had a fair hearing and been given the opportunity to establish his right to enter the country is wrongly imprisoned by officials of the United States. Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup. Ct. 201, 52 L. Ed. 369.

And the statutes of the United States not only give to judges of District Courts the power within their respective jurisdictions to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty (Rev. St. § 752 [Comp. St. § 1280]), but the Immigration Act of 1917 expressly provides, in section 25, that the District Courts are invested with full jurisdiction of all causes arising under any of the provisions of the act. St. vol. 39, part. 1, c. 29, p. 893 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼p). So that whenever the Secretary of Labor exceeds his powers in ordering the deportation of an alien, the latter, being deprived of his liberty and his right of entry under the law, may demand his release upon habeas corpus. Jurisdiction in the executive to order deportation exists only if the person held in detention is an alien who is not entitled to admission under the terms of the Immigration Act. Pending the determination of that question by the Executive the alien may be legally held in detention.

[1, 2] The Supreme Court in Re Burrus, 136 U. S. 586, 10 Sup. Ct. 850, 34 L. Ed. 1500, speaking through Justice Miller, declared that the extent of the authority of the courts of the United States to use the writ of habeas corpus as a means of releasing persons held in unlawful custody has always been clouded with more or less doubt and uncertainty. And it was said in that case, and it is still 'true, that—

"It is not now the law, therefore, * * * that every person held in unlawful imprisonment has a right to invoke the aid of the courts of the United States for his release by the writ of habeas corpus."

Before a court of the United States can issue the writ it should be made to appear that the application for the writ is founded upon some matter which justifies the exercise of federal authority. It is, however, well established that in cases involving the deportation of aliens the District Courts of the United States may issue the writ of habeas corpus to determine whether the alien who is held by the immigration officials of the government for deportation, as not being entitled to enter or remain in this country, has had a fair hearing under the immigration acts. Tulsidas v. Insular Collector, 262 U. S. 258, 263, 43 Sup. Ct. 586, 67 L. Ed. 969; Ng Fung Ho v. White, 259 U. S. 276, 284, 42 Sup. Ct. 492, 66 L. Ed. 938; Kwock Jan Fat v. White, 253 U. S. 454, 40 Sup. Ct. 566, 64 L. Ed. 1010; Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114; Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369; Ex parte Gin Mun On (D. C.) 286 Fed. 752; Sibray v. United States (C. C. A.) 282 Fed. 795, 797; United States ex rel. Weinstein v. Uhl (D. C.) 266 Fed.

929; Colyer v. Skeffington (D. C.) 265 Fed. 17, 23; White v. Fong Gin Gee (C. C. A.) 265 Fed. 600; Whitfield v. Hanges, 222 Fed. 745, 138 C. C. A. 199; United States v. Petkos, 214 Fed. 978, 131 C. C. A. 274; United States v. Williams, 200 Fed. 538, 118 C. C. A. 632; United States v. Tsuji Suekichi, 199 Fed. 750, 118 C. C. A. 188; Ex parte Pouliot (D. C.) 196 Fed. 437; United States ex rel. Glavas (C. C.) 190 Fed. 686; In re Nicola, 184 Fed. 322, 106 C. C. A. 464; Sprung v. Morton (D. C.) 182 Fed. 330; Ex parte Petterson (D. C.) 166 Fed. 536; United States v. Chung Shee, 76 Fed. 951, 22 C. C. A. 639.

[3, 12] Any person is a "prisoner" who is held in confinement against his will. And one who is in the custody of any official of the United States, who restrains him of his liberty in violation of a law of the United States, is entitled to sue out a' writ of habeas corpus to test the legality of his detention. So far the right of the detained alien is clear. Revised Statutes of the United States, § 753 (Comp. St. § 1281).

There is no doubt that an alien who is wrongfully held for deportation by the immigration officials is held in unlawful imprisonment. A person who is not detained by virtue of some lawful, judicial, legislative, or other proceeding is unlawfully confined. As the Supreme Court said in Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup. Ct. 201, 202 (52 L. Ed. 369), of an alien held for deportation, "De facto he is locked up until [he is] carried out of the country against his will."

[4] The term "imprisonment" imports any restraint placed upon one contrary to his wishes and amounting to à physical detention of his person. It is not necessary that he should be restrained behind prison bars. Hebrew v. Pulis, 73 N. J. Law, 621, 64 Atl. 121, 7 L. R. A. (N. S.) 580, 118 Am. St. Rep. 716; Ex parte Davidge, 72 S. C. 16, 51 S. E. 269; Savannah Guano Co. v. Stubbs, 138 Ga. 409, 75 S. E. 433; Martin v. Houck, 141 N. C. 317, 54 S. E. 291, 7 L. R. A. (N. S.) 576.

[5] It is claimed, however, that this alien is entitled to be admitted to bail under rule 30 of this court relating to the custody of prisoners on habeas corpus, and which provides as follows:

"1. Pending an appeal from the final decision of any court or judge declining to grant the writ of habeas corpus, the custody of the prisoner shall not be disturbed by bail or otherwise.

"2. Pending an appeal from the final decision of any court or judge discharging the writ after it has been issued, the prisoner shall be remanded to the custody from which he was taken by the writ, or shall, for good cause shown, be detained in custody of the court or judge, or be enlarged upon recognizance, as hereinafter provided.

"3. Pending an appeal from the final decision of any court or judge discharging the prisoner, he shall be enlarged upon recognizance, with surety, for appearance to answer the judgment of the appellate court, except where, for special reasons, sureties ought not to be required."

The language of the rule shows that it does not give to a prisoner in custody an absolute right in all cases to be released upon recognizance pending an appeal from a final decision discharging the writ, but it does give him in the cases to which it applies the right to be

admitted to bail except in those cases in which "special reasons" exist why that course should not be taken.

The Act of September 24, 1789, which established the courts of the United States, expressly declared:

"That all the said courts of the United States shall have power * * * to make and establish all necessary rules for the orderly conducting business in the said courts, provided such rules are not repugnant to the laws of the United States." 1 St. c. 20, § 17, p. 83.

And that power, though not in the exact words above quoted, they still possess. Rev. St. § 918, p. 175 (Comp. St. § 1544). The Act of March 3, 1891, which created the Circuit Courts of Appeals, expressly gave them "power to establish all rules and regulations for the conduct of the business of the court within its jurisdiction as conferred by law." 26 St. c. 517, § 2, p. 827. And the Act of March 3, 1911, c. 231, § 122, 36 St. 1132 (Comp. St. § 1114), embodied the same provision.

[6] Rule 30, above set forth, is clearly within the power of the court as respects criminal cases, for Congress has enacted that— .

"For any crime or offense against the United States, the offender may * * * be arrested and imprisoned, or bailed, as the case may be, for trial." Rev. St. § 1014 (Comp. St. § 1674).

And it has also enacted that bail shall be admitted upon all arrests in criminal cases where the offense is not punishable by death. Rev. St. § 1015 (Comp. St. § 1679).

[7] But it is settled that proceedings for the deportation of aliens under the immigration laws are not criminal proceedings. An alien seeking admission to the United States, who is denied the right to enter by the immigration officials, and who is detained by them for deportation, is not held for any crime or offense against the United States. In Fong Yue Ting v. United States, 149 U. S. 698, 730, 13 Sup. Ct. 1016, 1028 (37 L. Ed. 905), Mr. Justice Gray said:

"The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend."

And in Wong Wing v. United States, 163 U. S. 228, 235, 16 Sup. Ct. 977, 980 (41 L. Ed. 140), the court said:

"We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid. Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character and while arrangements were being made for their deportation. Detention is a usual feature of every case of arrest on a criminal charge, even when an innocent person is wrongfully accused; but it is not imprisonment in a legal sense."

See, also, United States ex rel. Bilokumsky v. Tod, 263 U. S. 149, 154, 44 Sup. Ct. 54, 68 L. Ed. ——; Bagajawitz v. Adams, 228 U. S. 585, 591, 33 Sup. Ct. 607, 57 L. Ed. 978; Runkle v. Burnham, 153

U. S. 216, 225, 14 Sup. Ct. 837, 38 L. Ed. 694; Kirby v. Tallmadge, 160 U. S. 379, 383, 16 Sup. Ct. 349, 40 L. Ed. 463; Quock Ting v. United States, 140 U. S. 417, 420, 11 Sup. Ct. 733, 851, 35 L. Ed. 501; Skeffington v. Katzeff (C. C. A.) 277 Fed. 129, 131; Colyer v. Skeffington (D. C.) 265 Fed. 17, 23; Chin Wah v. Colwell, 187 Fed. 592, 594, 109 C. C. A. 422; In re Chin Wah (D. C.) 182 Fed. 256.

It being settled that deportation proceedings are not criminal and that the right of a federal court to make rules is restricted to the conduct of its business within its jurisdiction conferred by law, the question is presented whether a federal court has had conferred upon it by law power to admit to bail in other than criminal cases. For if it has not the rule above set forth must be construed as applicable only to that class of cases.

[8] We appreciate that a person arrested in a civil action may under some circumstances be entitled to be released on bail. Thus the Revised Statutes of the United States, § 991 (Comp. St. § 1637), contain the following provision:

"When any person is arrested or imprisoned in any state, on mesne process or execution issued from any court of the United States, in any civil action, he shall be entitled to discharge from such arrest or imprisonment in the same manner as if he were so arrested and imprisoned on like process from the courts of such state."

[9] It is, however, to be observed that the provision above quoted applies to the case of a person arrested or imprisoned on process issued from any court of the United States in any civil action. An alien who is denied the right to enter the United States and who is held by the immigration authorities for deportation is not held on process issued "from any court of the United States in any civil action." On the contrary, he is held by the immigration authorities under authority conferred upon them by the act of Congress regulating immigration. The deportation proceeding is sui generis, and the authority of the immigration officials is not derived from the courts as the result of any civil action whatever. If a District Court, on an application for a writ of habeas corpus, inquires into the legality of a deportation order and finds that the immigration authorities have not exceeded their authority but that they have proceeded lawfully and has remanded the alien to their custody, he is in their custody, not because of any authority which those officials have derived from the court, but under the authority conferred upon the Executive by the acts of Congress.

[10] The power to admit to bail is not a mere matter of practice. In the United States the right to bail is thought to be dependent on statutes. 3 Am. & Eng. Encyc. of Law, 591; 6 C. J. 894.

In the case of In re Carrier (D. C.) 57 Fed. 578, District Judge Hallett said in an extradition case that the matter of admitting to bail is not a question of practice. "Since the time of Edward I," he declared, "it has been regulated by statute; and, in our day, bail is not allowed in any case except in pursuance of some statute." And the Circuit Court of Appeals for the Ninth Circuit asserted the same doctrine in 1911 in Chin Wah v. Colwell, 187 Fed. 592, 594, 109 C.

C. A. 422, 424, when the court declared that "the right" to admit "to bail on arrest in civil proceedings depends upon statutory provisions."

We have not overlooked Wright v. Henkel, 190 U. S. 40, 63, 23 Sup. Ct. 781, 787 (47 L. Ed. 948). The court in that case speaking through Mr. Chief Justice Fuller said:

"We are unwilling to hold that the Circuit Courts possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief. Nor are we called upon to do so as we are clearly of opinion, on this record, that no error was committed in refusing to admit to bail, and that, although the refusal was put on the ground of want of power, the final order ought not to be disturbed."

The case was one in which the lower court had dismissed a writ of habeas corpus and denied an application to be admitted to bail. Wright was charged with having committed a crime in England, in that, being a director of an English corporation, he had published certain false statements with intent to defraud the shareholders. His extradition was asked for under a treaty of extradition, and he was being held in custody awaiting further information from England. It is plain from the language quoted that what was said was at best a dictum not being necessary for the decision of the case. And the language used in that case was not understood by the Circuit Court of Appeals in the Ninth Circuit in Chin Wah v. Colwell, 187 Fed. 592, 594, 109 C. C. A. 422, and is not understood by us as by analogy asserting the proposition that the courts of the United States have the inherent power to admit to bail in deportation cases.

It is important to note that while Congress has deemed it necessary expressly to authorize the courts to admit to bail in criminal cases, it has failed to do so in deportation proceedings, and that the Act of February 5, 1917, which regulates the immigration of aliens to the United States, does not in express terms give to the courts power to admit to bail aliens who are detained for deportation, pending court proceedings to determine the legality of the deportation order.

We do not overlook the fact that Congress in the Chinese Exclusion Act of May 5, 1892, § 5 (Comp. St. § 4319), provided as follows:

"That after the passage of this act on an application to any judge or court of the United States in the first instance for a writ of habeas corpus, by a Chinese person seeking to land in the United States, to whom that privilege has been denied, no bail shall be allowed, and such application shall be heard and determined promptly without unnecessary delay."

This provision, at the most, implies that a Chinese person who is not seeking to land, but who has actually landed and is residing in the country at the time of his arrest for deportation on the ground that he is unlawfully here, may be admitted to bail pending an inquiry by the courts as to the legality of the proceeding against him.

But as the act in which the above provision is found is one which relates only to Chinese persons, it has no application to aliens of other races, and so cannot be construed by implication as conferring any right to bail upon other than persons of the Chinese race who may be held for deportation by the immigration officials.

It is true that courts of common law have power to admit to bail and that they possess it independently of statute. In Queen v. Spilsbury, 2 Q. B. Div. (1898) 615, Lord Chief Justice Russell in a criminal case declared:

"This court has, independently of statute, by the common law, jurisdiction to admit to bail."

And he cited from 1 Chitty's Criminal Law (2d Ed.) p. 97, as follows:

"The Court of King's Bench, or any judge thereof in vacation, not being restrained or affected by the Statute 3 Edw. I, c. 15 (1), in the plenitude of that power which they enjoy at common law, may, in their discretion, admit persons to bail in all cases whatsoever, though committed by justices of the peace or others, for crime in which inferior jurisdictions would not venture to interfere, and the only exception to their discretionary authority is, where the commitment is for a contempt, or in execution."

But the Circuit Courts of Appeals and the District Courts of the United States are not possessed of the jurisdiction of courts of the common law, and they have such jurisdiction only as is conferred on them by acts of Congress.

The government of the United States is one in which all power, legislative, executive, and judicial is delegated and defined by law. If the power exists in any department of the government, its source must be found either in the Constitution or in an act of Congress adopted pursuant to the fundamental law. It is "to one or both of these sources we must resort in every instance." The Floyd Acceptances, 7 Wall. 666, 676 (19 L. Ed. 169). In 1807 Chief Justice Marshall in the famous case of Ex parte Bollman, 4 Cranch, 75, 2 L. Ed. 554, stated that courts which originate in the common law possess a jurisdiction which must be regulated by the common law, until some statute changes their established principles. But, he added, courts which are created by written law and whose jurisdiction is defined by written law cannot transcend that jurisdiction. In considering the right of a federal court to admit to bail it is necessary to keep in mind the fundamental fact that the federal courts do not derive their jurisdiction and their powers from the common law, and that such powers as these courts possess they get from the Constitution and from acts of Congress. See, also, Whitney v. Dick, 202 U. S. 132, 26 Sup. Ct. 584, 50 L. Ed. 963; Petri v. F. E. Creelman Lumber Co., 199 U. S. 487, 26 Sup. Ct. 133, 50 L. Ed. 281; Thomas v. Ohio State University, 195 U. S. 207, 25 Sup. Ct. 24, 49 L. Ed. 160; Hanford v. Davies, 163 U. S. 273, 16 Sup. Ct. 1051, 41 L. Ed. 157; Johnson Steel Rail Co. v. Wharton, 152 U. S. 252, 14 Sup. Ct. 608, 38 L. Ed. 429; Bors v. Preston, 111 U. S. 252, 4 Sup. Ct. 407, 28 L. Ed. 419; United States v. Bevans, 3 Wheat. 336, 4 L. Ed. 404; Chisholm v. Georgia, 2 Dall. 419, 1 L. Ed. 440; Ex parte Craig (C. C. A.) 282 Fed. 138, 143. In Ladew v. Tennessee Copper Co., 218 U. S. 357, 368, 31 Sup. Ct. 81, 84 (54 L. Ed. 1069), the court said:

"The jurisdiction of the Circuit Courts is determined by acts of Congress enacted in pursuance of the Constitution. Apart from the powers that are inherent in a judicial tribunal, after such tribunal has been lawfully created, the Circuit Courts can exercise no jurisdiction not conferred upon them by legislative enactment."

The federal courts undoubtedly possess certain powers not immediately derived from statute, but which necessarily result from their very nature. They are powers which cannot be dispensed with in a court because they are necessary to the exercise of all others. The power to punish for contempt of the court's authority is such a power. United States v. Hudson, 7 Cranch. 32, 3 L. Ed. 259; Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 32 L. Ed. 405; Ex parte Savin, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150. In the case of In re Neagle (C. C.) 39 Fed. 833, 857, 858, 5 L. R. A. 78, the inherent power of the court to punish for contempt is discussed at some length, and it is said:

"It is involved in the very idea of a court, having power to administer the laws of the land. It would be impossible for courts to perform their functions and administer the laws without it. And as so inherent, the power to punish various acts not mentioned as such, for contempt, was as much a part of the law of the United States as if ordained by a specific provision of the statute of the United States. * * *"

But it seems to us that the power to admit to bail is not a power inherent in the court, and that it is not necessary that a court should be possessed of such power in order that it may perform its functions and administer the laws.

We have not overlooked, in our examination of this subject, the statement made by Mr. Justice Nelson speaking for the Supreme Court in the case of In re Kaine, 14 How. 103, 133 (14 L. Ed. 345). In that case the court pointed out that a writ of habeas corpus supersedes the original writ of arrest, and that pending the hearing on the application for the writ the prisoner is entirely under the authority of the court issuing the writ of habeas corpus or of the court to which the return is made. The court then went on to say:

"He [the prisoner] may be bailed on the return de die in diem, or be remanded, to the same jail whence he came, or to any other place of safe-keeping under the control of the court, or officer issuing the writ, and by its order brought up from time to time, till the court or officer determines whether it is proper to discharge or remand him absolutely."

See, also, Barth v. Clise, 12 Wall. 400, 402, 20 L. Ed. 393; Stallings v. Splain, 253 U. S. 339, 342, 40 Sup. Ct. 537, 64 L. Ed. 940.

The language above quoted was used in a criminal case, and there is express statutory authority for admitting to bail in that class of cases. It is not our understanding that the court meant to be understood as laying down the broad proposition that in any case in which a habeas corpus is applied for in a civil action or in a proceeding sui juris for deportation of an alien the court, irrespective of statutory authorization, has authority to admit to bail.

Before bringing this opinion to a conclusion, we shall now proceed to a consideration of some of the cases in which the right to bail in deportation proceedings has been recognized or denied. In Chin Wah v. Colwell, 187 Fed. 592, 109 C. C. A. 424, the Circuit Court of Appeals for the Ninth Circuit held that proceedings for deportation of Chinese aliens not being criminal in character, the general statutory provisions concerning bail in criminal cases did not apply. It also held that the right to bail on arrest in civil proceedings depended on

statutory provisions. It declared that the courts of the United States have no inherent power to admit to bail in deportation cases. The court referred to the Act of May 5, 1892, heretofore cited, and said:

"The power to admit to bail in deportation cases, if it exists, is created by implication in those provisions of the exclusion acts in which it is declared there shall be no admission to bail in certain specified instances. But is it to be inferred that in other stages of the proceedings the admission to bail is obligatory upon the courts, and is extended as a matter of right to all Chinese persons held in custody? If it had been the intention of Congress so to provide, it would seem reasonable to assume that the intention would have been affirmatively and clearly expressed, and not left to implication. In view of the fact that there was no authority to admit to bail in deportation cases prior to the act of 1892, and that the power to admit to bail rests in implication, from the express prohibitions of that act and of the act of 1893, we think the reasonable construction is that no greater power is given than that which is necessarily to be implied, and that it is a power, therefore, to be exercised by the court in its discretion. In harmony with this view are the decisions in Re Ah Tai (D. C.) 125 Fed. 795, in Re Lum Poy (C. C.) 128 Fed. 974, and in United States v. Fah Chung (D. C.) 132 Fed. 109."

The Circuit Court of Appeals for the Eighth Circuit had before it in Whitfield v. Hanges, 222 Fed. 745, 138 C. C. A. 199, the right to deport certain citizens of Greece who were aliens resident in the United States, who had been arrested and were held for deportation by the immigration officials. A writ of habeas corpus was applied for, and a hearing was had in the District Court which ordered the release of the aliens. The immigration inspector appealed claiming that the aliens had had a full and fair hearing before the immigration officials, and that the government was entitled to deport them. At the conclusion of the opinion of the Circuit Court of Appeals it is said:

"The practice approved by the Supreme Court and generally prevailing, however, seems to be that the court which takes jurisdiction and custody of the alien under the writ of habeas corpus and finds that his hearing has been unfair retains custody and jurisdiction of him and of the case, and tries on the merits de novo on evidence introduced before that court the question whether or not the alien is guilty of the charges made against him in the warrant of arrest before making his discharge absolute. Meanwhile the court has ample power to admit the alien to bail or to take his own recognizance."

The remark that "meanwhile the court has ample power to admit the alien to bail or to take his own recognizance" is the only reference to the matter of bail contained in the entire opinion. It seems to be taken for granted that the power to admit to bail exists, and no explanation is given as to the source of the power. These two decisions, one in the Eighth Circuit in 1915 and one in the Ninth in 1911, are the only two cases in the Circuit Courts of Appeals on this question which are known to us. And the decision in the Ninth Circuit, if it was known to the court in the Eighth Circuit, was not commented upon or mentioned by it.

In the case of the Chinese Wife (C. C.) 21 Fed. 808, a Chinese person ordered to be deported by the vessel that brought such person to the United States, or by some other vessel of the same line, applied to be admitted to bail, and Mr. Justice Field, who decided the case in his capacity as Circuit Justice assigned to the Ninth Circuit, held

that the court had no power to admit such person to bail. Circuit Judge Sawyer dissented, and District Judges Hoffman and Sabin concurred in the dissent. No one of the judges commented upon the distinction which exists between admitting to bail in deportation proceedings as distinguished from admitting to bail in criminal proceedings.

In the case of In re Chow Goo Pooi, 25 Fed. 77, the Circuit Court for the District of California, in 1884, said:

"We are unanimously of opinion that when a Chinese person is detained on board of a ship and refused the right to land, whether by the authority of the master in pursuance of the provisions of the Chinese restriction act, or by the refusal of the collector to grant him permission to land, he is restrained of his liberty under or by color of the authority of the United States, and that he is entitled as of common right to sue out a writ of habeas corpus, that the legality of his detention and restraint may be passed upon by the court. When his body, in obedience to the writ, is produced in court, we are also of opinion that the control of his person remains with the court, and that he may be committed to the custody of the marshal, or be held to bail to await the decision of the court."

The court appears to have assumed that in any habeas corpus proceeding, whether in a criminal case or in a civil one, or in a deportation proceeding, the court has the right to admit to bail. The matter is not discussed, but is disposed of by the simple statement above made. See, to the same effect, In re Ah Kee (C. C.) 21 Fed. 701, 706.

The right to admit to bail was claimed by a Chinese person under the Chinese Exclusion Act of May 5, 1892, in Re Ah Tai (D. C.) 125 Fed. 795, a case arising in the District of Massachusetts. That case is one of the few cases in the District Courts in which the subject seems to have received that careful consideration which the difficulties involved seem to require. In that case Judge Lowell, while he sustained the right of the Chinaman to bail, admitted:

"The bailing of a Chinaman under the exclusion acts is not easily brought within the general principles governing the law of bail and recognizance."

After commenting upon the fact that deportation proceedings are not criminal in their nature, he said:

"It seems to follow that Chinamen whose deportation is sought * * * have not the right * * * to * * * bail. On the other hand, if the proceedings * * * are deemed civil in their nature, it is not easy to find authority for admission of the respondent to bail, unless an arrest in a civil case necessarily imports the right to a release upon bail. The statutory provisions for special bail (Rev. St. § 942 [U. S. Comp. St. 1901, p. 693]) have little * * * application to a case like this. * * *"

He then refers to the fact that in a number of districts bail has been taken at some stage of the proceedings. And he adds:

"Were bail never taken, the jails might be overcrowded, and the recent arrests in this city show that this danger is not imaginary. To hold bail altogether inadmissible under the act would invalidate hundreds of existing recognizances. The reported cases, the practice of many judges, the language of the statutes, and practical convenience all combine to suggest that bail should not be altogether excluded in proceedings for deportation. This court is not disposed to disregard considerations of such importance."

In the case of In re Chin Wah, 182 Fed. 256, which arose in the District Court of Oregon in 1910, District Judge Bean admitted that

constitutional and statutory provisions regulating admission to bail, either in criminal or civil cases, had little or no application to deportation proceedings, which proceedings he said were sui generis. He then went on to say:

"In my judgment a tribunal which has authority to hear and determine a charge of such moment has the inherent power, unless prohibited by statute, to admit the accused to bail pending his examination. The power to bail in such a case is inherent, and incident to the power to hear and determine. * * * It logically follows, from its power to hear and discharge on final hearing, that the court has power to grant a temporary discharge on bail pending such hearing."

In United States v. Yee Yet, 192 Fed. 577, a case arising in 1911 in the District Court of New Jersey, the court cited a number of authorities in Chinese Exclusion cases in support of the proposition of the right to bail, and declared that in the Third Circuit it had been the practice pending such an appeal to admit the appellant to bail and it was declared that a like practice appeared to have been followed in a number of the other states which were named. The District Judge stated that in view of the practice which had so generally obtained in like cases he felt constrained to uphold the bond and overrule the demurrer. He, however, admitted that there is no statutory authority for the allowance of bail in this class of cases, and did not consider the question that a United States court has no inherent power to admit to bail.

The question of the right to bail on an appeal in immigration cases has been before the District Court for the Southern District of New York in a number of cases and has been denied. In Ex parte Ronchi, 165 Fed. 558, Judge Holt said:

"If the question were an original one, my personal opinion would be that the court would have power to take bail in this case, under paragraph 2 of rule 33 of the United States Circuit Court of Appeals. 150 Fed. xxxvi, 79 C. C. A. xxxvi. But the construction of the paragraph is doubtful, and it was held by Judge Brown, in Re Iasigi (D. C.) 79 Fed. 755, and by Judge Ward, in Re Funaro (no written opinion filed), that there is no such power. Judge Adams held, in the Crawford Case (no opinion), that there was such power, but the circumstances in that case were peculiar. Upon the whole, I think that, in the absence of any authoritative decision of the appellate court, I should follow the Iasigi and Funaro Cases."

In United States v. Sisson (D. C.) 220 Fed. 538, 540, 541, which was an immigration case, the right to bail pending an appeal was discussed. Judge Learned Hand, in that case, said:

"A question has also been raised of bail pending an appeal. This matter has been the subject of a confusion which it seems to me the subject does not justify. A writ of habeas corpus does not put the relator into the custody of this court. It does not assume to disturb the custody of the person then detaining the relator. It requires his production and examines the legality of the custody. This court has no proper power to enlarge the relator while the inquiry proceeds, and less power to do so after the writ has been dismissed. If the writ be sustained, and the prisoner discharged, then the court might provide for bail to insure his appearance if the ruling were reversed, but only in that case. Till the writ be sustained, the question of bail depends entirely upon the rules regulating the relator's custody where he already is."

[11] The conclusion we have reached is that neither this court nor the District Court has authority to admit to bail, Congress having conferred no power to admit to bail in such a deportation proceeding as the one now pending in this court. For these reasons the motion to admit to bail, pending the hearing of the appeal, is denied.