PRINCIPE v. AULT, Inspector in Charge of Cleveland Office, et al.

Civil Action No. 23225.

District Court, N. D. Ohio, E. D.

Aug. 30, 1945.

Geo. D. Costello and Geo. A. Costello, both of Cleveland, Ohio, for plaintiff-relator.

Don C. Miller, U. S. Atty., and William C. Graves, Asst. U. S. Atty., both of Cleveland, Ohio, for defendant-respondent.

WILKIN, District Judge.

This case came on for hearing on the application of the defendant-respondent for continuance and on the application of the plaintiff-relator for bail.

The plaintiff-relator was brought into court in response to the alternative writ of habeas corpus issued by this court on August 17.

In his application for writ of habeas corpus the plaintiff alleged that he had been arrested in March, 1941, on an order or warrant of deportation issued by the Commissioner of Immigration and Naturalization and approved by the Attorney General of the United States; that thereafter he was released on bail of $500. On August 14, 1945, he was again taken into custody for the purpose of being deported from the United States to Italy. He further alleged that the reason for such order of arrest and deportation was the claim of the defendant-respondent that his presence violated the immigration law because he had been found guilty of a felony involving moral turpitude within five years of the time of his last entry into the United States. But the plaintiff denied that said conviction was within such five-year period. Plaintiff further alleged that he has lived in this country for 25 years, is married, has three children, and that the order of deportation is arbitrary and contrary to law.

Upon the return date of the writ the defendant requested postponement of the hearing to allow time for the production of required witnesses and evidence. The application of the defendant was granted, and the plaintiff thereupon filed his application for bail. The question now to be determined therefore is whether this court has authority to grant bail to an alien ordered deported pending the hearing of his application for writ of habeas corpus.

Because of the conflict of authorities and general confusion regarding the question of bail in such cases, the issue was argued by counsel and memo. of authorities submitted.

It has long been the practice of this court to grant bail when the circumstances of such cases so warrant. It has been the view of the judges of this court that persons brought into court in response to its

preliminary writ were in the custody of the court and that there was inherent power in the court to release or enlarge them on bail pending final disposition of the case. Because a number of other courts have expressed contrary views, the same legal arguments arise every time bail is requested. This court therefore felt obliged to set down the reasons for its views so that the law would be settled so far as this court is concerned, unless some higher authority reverses the ruling. Until such reversal, subsequent cases can be disposed of on the facts.

There is no statute expressly authorizing the court to grant bail in such cases. Congress has provided, in Title 8, Sec. 156 U.S.C.A. that the Attorney General may do so. Sections 591 and 596 of Title 18 U.S.C.A. provide for bail by courts in criminal cases, but all authority recognizes that an application for a writ of habeas corpus is not a criminal case. Ex parte Tom Tong, 108 U.S. 556, 2 S.Ct. 871, 27 L.Ed. 826. The statutes dealing with habeas corpus, 28 U.S.C.A. § 451 to 466, inclusive, do not mention bail. The power of the court to admit to bail, if it exists, must therefore be inherent, unless Sec. 461 of such title is an inferential grant of such power.

On the question of inherent power to grant bail in such cases, the courts have divided themselves into two groups. The following cases support the contention that the power to admit to bail is incident to the power to hear and determine the case: United States v. Evans, 6 Cir., 1880, 2 F. 147; In re Gannon, D.C.Pa.1928, 27 F.2d 362; In re Chow Goo Pooi, 9 Cir., 25 F. 77; In re Ah Kee, 9 Cir., 1884, 21 F. 701; In re Ah Tai, D.C.Mass., 125 F. 795; In re Chin Wah, D.C.Or., 1910, 182 F. 256; United States v. Yee Yet, D.C.N.J.1911, 192 F. 577; Whitfield v. Hanges, 8 Cir., 222 F. 745; Ewing v. United States, 6 Cir., 1917, 240 F. 241.

The following cases support the view that there is no such inherent power in the federal courts and that they cannot admit a person to bail unless such power is expressly conferred by statute: In re Carrier, D.C.Colo.1893, 57 F. 578; Case of Chinese Wife, C.C.Cal.1884, 21 F. 808; Chin Wah v. Colwell, 9 Cir., 1911, 187 F. 592; United States v. Curran, 2 Cir., 1924, 297 F. 946, 36 A.L.R. 877; United States v. Pizzarusso, D.C., 28 F.Supp. 158; In re Hanoff, D.C.Cal.1941, 39 F.Supp. 169; Ex parte Perkov, D.C.Cal.1942, 45 F.Supp. 864; United States v. Longo, D.C.Conn.1942, 46 F. Supp. 169; Bongiovanni v. Ward, D.C.Mass. 1943, 50 F.Supp. 3.

The privilege of both the writ of habeas corpus and of bail have Constitutional recognition. Constitution of the United States, Art. 1, Sec. 9, and Amendment VIII. It is generally conceded that the American colonists brought with them to this country the remedy by habeas corpus as it existed in England as part of the common law. 39 C.J.S., Habeas Corpus, § 3, p. 427. The power to grant bail was very broad at common law. Chitty (I Criminal Law, 2d Ed., p. 97,) states:

"The Court of King's Bench, or any judge thereof in vacation, * * * in the plenitude of that power which they enjoyed at common law, may, in their discretion, admit persons to bail in all cases whatsoever, though committed by justices of the peace or others, for crime in which inferior jurisdictions would not venture to interfere, and the only exception to their discretionary authority is where the commitment is for a contempt, or in execution."

This was conceded even in the Curran case, supra [297 F. 954]:

"It is true that courts of common law have power to admit to bail and that they possess it independently of statute. In Queen v. Spilsbury, 2 Q.B.Div. (1898) 615, Lord Chief Justice Russell in a criminal case declared:

"'This court has, independently of statute, by the common law, jurisdiction to admit to bail.'" (Not criminal, but extradition case.)

See also Wright v. Henkel, 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948.

The earlier cases in this country seem to recognize the inherent power of courts to grant bail in habeas corpus proceedings. The power seems to have been recognized by the Supreme Court in Ex parte Bollman, 1807, 8 U.S. 75, 4 Cranch 75, 2 L.Ed. 554. Warren in "The Supreme Court in U. S. History," Vol. I, at p. 397, comments:

"The day after the close of the arguments, the court stated that it 'had not yet been able to make up a decisive opinion; in the meantime, as the situation of the prisoners might be irksome to them, if they could find bail, they might be bailed until tomorrow'".

It therefore seems that the court at that early time sua sponte exercised such inherent power. In the case of Wright v. Henkel, supra [190 U.S. 40, 23 S.Ct. 787], the Supreme Court said:

"We are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief."

It has very generally been thought that the custody of the prisoner is entirely under the direction and control of the court to which the return is made. 39 C.J.S., Habeas Corpus, § 94, p. 659; Barth v. Clise, 79 U.S. 400, 12 Wall. 400, 20 L.Ed. 393; In re Hamilton, F.Cas.No.5,976; Mahler v. Eby, 264 U.S. 32, 45, 46, 44 S.Ct. 283, 68 L.Ed. 549. And it has been recognized as a general rule that the court may admit to bail the person detained, pending the determination of the habeas corpus proceeding. 39 C.J.S., Habeas Corpus, § 95, n. 64, p. 660 (citations to state authorities); United States v. Doss et al., Fed.Cas.No. 14,985; In re Chow Goo Pooi, C.C.Cal., 25 F. 77, 78. As was stated by Mr. Justice Nelson in the case of In re Kaine, 14 How. 103, at page 133, 14 L.Ed. 345:

"And pending the examination or hearing, the prisoner, in all cases, on the return of the writ, is detained, not on the original warrant, but under the authority of the writ of habeas corpus. He may be bailed on the return de die in diem, or be remanded to the same jail whence he came, or to any other place of safe keeping under the control of the court, or officer issuing the writ, and by its order brought up from time to time, till the court or officer.determines whether it is proper to discharge or remand him absolutely."

If this were not the law, the very purpose of the writ might be defeated. The person deprived of his liberty requires some freedom for the preparation of his case. If there is a protracted hearing or a postponement, peculiar circumstances might make it cruel and unjust to leave the applicant for the writ in the custody of the person against whom the application is directed.

Judge Learned Hand, in the case of United States v. Sisson, D.C., 220 F. 538, 540, said:

"A writ of habeas corpus does not put the relator into the custody of this court. It does not assume to disturb the custody of the person then detaining the relator. It requires his production and examines the legality of the custody. This court has no proper power to enlarge the relator while the inquiry proceeds, and less power to do so after the writ has been dismissed."

The language used by this honored judge should be restricted to the case then before him. He was dealing with an application for bail pending appeal after the application for writ of habeas corpus had been dismissed. Judge Hand further said:

"If the writ be sustained, and the person discharged, then the court might provide for bail to insure his appearance if the ruling were reversed, but only in that case."

With the ruling in that case this court does not disagree, but if the language employed is to be extended to such a case as the one now before this court, we doubt the correctness of the statement. It seems that when Judge Hand recognized that "the court might provide for bail to insure his appearance if the ruling were reversed," he recognized the inherent power of the court in the premises. We concur in Judge Hand's statement that the "question of bail depends entirely upon the rules regulating the relator's custody where he already is" when a prompt hearing on the preliminary writ is had and the writ is dismissed. We would not agree, however, that the court is without any authority to grant bail "till the writ be sustained."

It seems to this court that the authorities which limit the courts to such grants as have been made by statute fall into error through confusion of the words "jurisdiction" and "power." The opinion in the case of United States v. Curran, 297 F. 946, at page 954, 36 A.L.R. 877, says:

"But the Circuit Courts of Appeals and the District Courts of the United States are not possessed of the jurisdiction of courts of the common law, and they have such jurisdiction only as is conferred on them by acts of Congress. * * * In considering the right of a federal court to admit to bail it is necessary to keep in mind the fundamental fact that the federal courts do not derive their jurisdiction and their powers from the common law, and that such powers as these courts possess they get from the Constitution and from acts of Congress."

So far as jurisdiction is concerned there is no doubt that the language of the statutes controls. This court has only such jurisdiction as Congress has prescribed. The jurisdiction of this court in this case is provided for in Section 41(14) and (22) and in Chap. 14 of Title 28 U.S.C.A. But in determining the powers of the court within that grant of jurisdiction we must consider the words used in the light of their historic background. When the court was granted authority to issue writs of "habeas corpus" and "to dispose of the party as law and justice require", it was given power impliedly to do those things which courts generally had done in habeas corpus proceedings.

As Judge Dickinson said in In re Gannon, D.C., 27 F.2d 362, 363:

"The 'judicial power' is conferred by the Constitution upon the courts of the United States. The framers of the Constitution were familiar with common-law concepts and the words and phrases employed by common-law lawyers. The words chosen are 'courts' and 'judicial power'. Whatever else may be said of the jurisdictional authority (in the power sense) of the judiciary, the meaning of the words and phrases used must be sought for in the literature of what we call the common law. Courts cannot function without the use of process, and any tribunal which has judicial powers can enforce attendance by holding the party to bail."

There is a tendency in recent cases to deny and restrict the authority of federal trial courts. It is frequently stated that the District Court "is a court of limited jurisdiction and can do only those things that Congress has prescribed." Prompted by the modern desire to extend and enhance the administrative function, prompted also by the popular inclination to restrict all authority, prompted also no doubt by the inclination of many judges to do nothing except what is expressly commanded or for which there is a specific precedent and influenced probably by the legal positivism until recently quite popular, there has been a noticeable and growing tendency to restrict the powers of courts to the lex scripta and deny all inherent powers. To one familiar with the growth and development of our law, this tendency is alarming and regrettable. We cannot with impunity divorce our trial court from its evolution. If the attempt to do so should succeed, it would reduce the court to the status of the mule—

a creature "without pride of ancestry or hope of posterity," whose whole course is controlled by command. Human affairs are too complex to be confined entirely within a code. Some latitude of discretion must be allowed for growth and for the varying circumstances of succeeding cases.

■ This court takes no exception to the statement of other courts that the applicant for the writ has no inherent right to bail. Neither the Constitution nor the statutes expressly grant the right of bail to aliens. And this court also concedes that the authority of administrative officers to grant bail is dependent on statutory grant. Prentis v. Manoogian, 6 Cir., 16 F.2d 422. The action of this court in granting bail in certain cases is based not upon the inherent right of the applicant but the inherent power of the court to control the proceedings before it and to dispose of the party as justice shall require.

Many of the courts that deny the power to grant bail do so upon the ground that the statutes provide for bail only in criminal cases, 18 U.S.C.A. §§ 581, 596, and in those cases where the "process or execution issued from any court of the United States." 28 U.S.C.A. § 844. Because the application for a writ of habeas corpus is a civil action and the process for the arrest of the applicant in a case like this issues from the office of the Immigration Service, such courts conclude that there is no power to order the applicant released on bond. But the writ of habeas corpus is never a proceeding in the original criminal prosecution or in the original deportation proceeding. The application for writ of habeas corpus is an independent civil suit. Ex parte Tom Tong, 108 U.S. 556, 559, 2 S.Ct. 871, 27 L.Ed. 826; Riddle v. Dyche, 262 U.S. 333, 336, 43 S.Ct. 555, 67 L.Ed. 1009. The power to order bail must be determined entirely by the law applicable to habeas corpus without regard to the law applicable to the proceeding which led to the arrest. On the final hearing, criminal statutes or the deportation statutes will have to be considered to determine the validity of the arrest, but the proceedings in the habeas corpus action are controlled entirely by the law governing habeas corpus.

■ For reasons stated, it seems to this court peculiarly its responsibility to determine whether or not an applicant for the writ should be enlarged upon bond. Because the applicant is in the custody of the

court, the court should not attempt to impose the responsibility of granting bond on the Immigration Service or the Attorney General. The Service and the Attorney General very properly decline to grant release on bond after the person arrested for deportation has gone into court with his application for a writ. Pending the determination of the issues raised by that application the Immigration Service and the Attorney General should leave the disposition of the applicant to the court.

As was pointed out by Lord Russell in the case of The Queen v. Spilsbury, supra, we are not to conclude that the court is without power because no power was expressly granted, but we are to conclude that the court has the power to admit to bail unless we find that the exercise of such power is forbidden by statute. "Therefore", says Lord Russell, "the case ought to be looked at in this way: Does the Act of Parliament either expressly or by necessary implication deprive the court of that power?" Because he found the power inherent and not denied he concluded that the court possessed the power, although he refused, for reasons peculiar to that case, to exercise the power. And so this opinion concludes, as did that case, that, "This inherent power to admit to bail is historical, and has long been exercised by the court, and if the legislature had meant to curtail or circumscribe this well-known power, their intention would have been carried out by express enactment."

Application for bail allowed. Plaintiff ordered released on bond in the sum of $1500.