**UNITED STATES ex rel. ABBENANTE**
**v. BUTTERFIELD.**

Civ. A. 12425.

United States District Court
E. D. Michigan, Southern Division.
May 20, 1953.

Howell Leuck and Irwin B. Fried, Cleveland, Ohio, for relator.

Joseph C. Murphy, Acting U. S. Atty., Kenneth W. Smith, Asst. U. S. Atty., and Joseph Sureck, United States Immigration and Naturalization Service, Detroit, Mich., for respondent.

LEVIN, District Judge.

The petitioner, an alien residing in the United States since 1914, finds himself in the tragic position of being subject to an order of deportation to Italy where he has no relatives or friends.

Pursuant to a petition alleging irregularities in the proceedings and an illegal order of deportation, a writ of habeas corpus was allowed. An examination of the record and a consideration of the briefs and arguments of counsel leave me with the opinion that the petition is without merit, and an order will be entered dismissing the writ of habeas corpus.

The petitioner, a narcotic addict, was sentenced on December 5, 1944, to a term of more than one year for having knowingly uttered a false writing purporting to be a prescription for narcotics and on July 21, 1950, was sentenced for a similar offense to a term of more than one year.

The charges brought against him were based on Section 494 of Title 18 U.S.C.A. which is a re-enactment, with slight changes, of Section 72, Title 18 U.S.C.A.[1]

1. "Whoever falsely makes, alters, forges, or counterfeits any bond, bid, proposal, contract, guarantee, security, official bond, public record, affidavit, or other writing for the purpose of defrauding the United States; or

"Whoever utters or publishes as true or possesses with intent to utter or publish as true, any such false, forged, altered, or counterfeited writing, knowing the same to be false, forged, altered, or counterfeited; or

"Whoever transmits to, or presents at any office or to any officer of the United States, any such false, forged, altered, or counterfeited writing, knowing the same to be false, forged, altered, or counterfeited— * * *."

The Attorney General in both instances designated the United States Public Health Service Hospital at Lexington, Kentucky, for the institutionalization and treatment of the petitioner. While there he received extensive medical and surgical treatment, all with the purpose of curing him of the addiction and the resulting physical and neurological disabilities.

While serving the sentence under the second conviction, the deportation proceedings were commenced against him under Section 19(a) of the Immigration Act, 8 U.S.C.A. § 155(a), which in its pertinent part reads as follows:

"* * * any alien * * * who is sentenced more than once to such a term of imprisonment [one year or more] because of conviction in this country of any crime involving moral turpitude, committed at any time after entry * * * shall, upon the warrant of the Attorney General, be taken into custody and deported. * * *"

The proceedings resulted in an entry of the order for deportation. It may be noted that under Section 19(a) it is provided that in the case of a crime involving moral turpitude deportation shall not apply to the alien if the court, at the time of passing sentence or within thirty days thereafter, recommends to the Attorney General of the United States that he not be deported, or if he is pardoned. A recommendation of the judge against deportation was not made and the petitioner has not been pardoned.

The petition and the briefs filed in behalf of the alien attack the legality of the deportation proceedings and the order of deportation on a number of points of which two will be discussed: (1) That the crime does not involve moral turpitude and (2) That the petitioner's sentence and confinement to the hospital at Lexington, Kentucky, did not constitute a sentence to imprisonment under the immigration laws within the meaning of Section 19(a) of the Immigration Act, supra.

■ One of the responsibilities assumed by the Federal Government is the control of the sale of narcotics. It is provided by Congress that a druggist may not dispense narcotics except upon a writing of a duly authorized physician. Section 494 of Title 18 U.S.C.A., supra, containing the words, "other writing," is broad enough to protect the Government not only against the consequences that might result from the forgery, alteration or counterfeiting of documents, records or writings that have some connection with its business as conducted by its own officers, but against an impairment of the administration of governmental functions even though there be no pecuniary loss to the Government. The presentation to a druggist of a forged prescription for narcotics flouts the cited statute. Compare United States v. Goldsmith, 2 Cir., 68 F.2d 5.

■ Since Jordan v. De George, 1951, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, it must be held that the forgery or the uttering of a forged prescription or any other writing with the intent to defraud the Government of the United States involves moral turpitude. The particular circumstances under which the crimes were committed by the petitioner, such as the fact that he did not forge and utter the prescriptions except to satisfy his own craving for narcotics, may not be considered by the court in determining the question as to whether the crimes for which he was convicted on the two occasions involved moral turpitude. United States ex rel. Robinson v. Day, 2 Cir., 51 F.2d 1022. Similarly, the court in this proceeding may not inquire into the alleged mental incompetency of the petitioner at the time the offense was committed or at the time of his conviction. McMahan v. Hunter, 10 Cir., 150 F.2d 498.

■ The fact that petitioner's incarceration took place in the United States Public Health Service Hospital in Lexington, Kentucky, does not, as the petitioner contends, relieve him of the consequences of the sentence of imprisonment.

The law governing the confinement of addicts to the United States Public Health Service Hospital at Lexington, Kentucky, is found in 42 U.S.C.A. §§ 257 and 259. The confinement of a narcotic addict in a

hospital specializing in the treatment of his particular disease is apparently for the convenience of the Government.

The term "imprisonment" imports any restraint placed upon a person contrary to his wishes and amounting to physical detention of his person, and it is not necessary that he should be restrained behind prison bars. United States ex rel. Carapa v. Curran, 2 Cir., 297 F. 946, 36 A.L.R. 877. Compare Sections 257 and 259, Title 42 U.S.C.A. which set out the distinction between addicts who voluntarily, Sec. 257, submit to a public health hospital, and those addicts confined, Sec. 259, to an institution in execution of a sentence after conviction. One of the points of difference is that Section 259 provides that a prisoner who has been cured during the term of his imprisonment shall be transferred to the institution from which he was received or to such other institution as may be designated by the Attorney General.