CARLSON v. LANDON.

STEVENSON v. LANDON.

HYUN v. LANDON.

CARLISLE v. LANDON.

Nos. 12742–12745.

United States Court of Appeals
Ninth Circuit.

March 13, 1951.

---

John W. Porter, Margolis & McTernan, Los Angeles, Cal., for appellant Carlson.

Rose S. Rosenberg, Los Angeles, Cal., for appellant Stevenson.

Milton S. Tyre, Los Angeles, Cal., for appellant Hyun.

Stanley Fleishman, Hollywood, Cal., for appellant Carlisle.

Ernest A. Tolin, U. S. Atty., Walter S. Binns, Ray H. Kinnison, Asst. U. S. Attys., Howard L. Field, Dist. Adjudication Officer, U. S. Imm. & Nat. Service, Dept. of Justice, all of Los Angeles, Cal., for appellee.

A. L. Wirin, Los Angeles, Cal., and Laurence R. Sperber, Beverly Hills, Cal., for American Civil Liberties Union and National Lawyers Guild, amici curiæ.

Before STEPHENS, HEALY and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The above entitled proceedings in habeas corpus are here upon a second appeal after remand with instructions. The appellant-petitioners, all aliens, are being held by the local Director of Immigration (Landon) upon instructions from the Attorney General[1] of the United States, pending hearing upon warrants of arrest and for deportation under the Act of October 16, 1918, as amended by the Internal Security Act of 1950, ch. 1024, Pub.Law 831, 8 U.S.C.A. § 137 et seq. Petitioners separately demanded their release through petitions for the issuance of the writ of habeas corpus, and the district court dismissed the proceedings upon a show cause order.[2] We reversed and remanded.

In our opinion in the Carlson case, No. 12742, 9 Cir., 1950, 186 F.2d 183, we discussed the law which we deemed applicable to all of the cases and held (1) in accordance with the district court that the provision of the 1950 amendment to the Act of October 16, 1918, which refers to the release of aliens under arrest for deportation pending a hearing, requires the exercise of discretion on the part of the Attorney General in providing for release of the arrestee under bail or his detention without bail, Sec. 23, and (2) not in accordance with the district court that in a habeas corpus proceeding for release of the arrestee under bail, where detention without bail has been ordered, and petitioner had alleged in his petition that he was a law abiding person of a substantial character and that he would attend all hearings and was not a security risk, some fact upon which the discretion denying release on bail was based must be revealed by the Attorney General showing that such order was the result of a reasoned conclusion from relevant facts. The Attorney General's discretion mentioned refers, of course, to discretion exercised or to be exercised upon the question as to whether the release of appellants on bail would likely endanger the security of the United States and whether they likely would fail to present themselves at the deportation hearings.

We reversed because no such revelation had been made, and remanded for further hearing. The district court complied, issued the writ, and return and supplemental return was made and traversed.

The district court, upon the original hearing, had adhered strictly to the theory that since the return to each petition showed regularity on its face the burden

---

1. The opinion occasionally refers to the Attorney General where the statute places the authority with him, even though this authority may have been delegated to the Commissioner of Immigration and Naturalization. See Title 8 U.S.C.A. § 156, as amended by the Act of September 23, 1950, c. 1024, Title I, § 23, 64 Stat. 1010.

2. The hearing was upon the show cause order but under stipulation of the parties it was deemed that the writ had issued and the judgment conformed.

was upon the petitioner to go forward to prove the illegality of the restraint. Each appellant had set out facts in his petition and traverse personal to himself and his family status, as above indicated, which remained undenied, and relied upon the undenied portions of the petition and traverse and gave no oral evidence or further documentary evidence. Each appellant also alleged that his release under bail would not endanger the security of the United States and that the hearings would stretch over many months before being concluded, which latter allegations were put in issue.

At the resumed hearing and after the issuance of the writ, the Director filed his return and amended return, annexing in Carlson's case to the latter an affidavit stating certain facts, most of which were undenied, and the Director relied upon the undenied portions of his returns and affidavit as proof that the Attorney General had properly exercised his discretion in denying bail as to each arrestee. The district court then gave every possible opportunity to the Director and to each arrestee to go forward with evidence, and all refrained. The court then denied each petition and dismissed the writ as to each, and remanded each arrestee to the custody of the Director.

Without restatement thereof, we adhere to our former Carlson opinion, 1950, 186 F.2d 183, and now proceed to the key question:

Was the District Court in Error in Concluding That the Affidavits, Together With the Undenied Portions of the Pleadings, Failed to Show That Appellants' Restraint Was Illegal?

We shall proceed to state briefly the revealed facts as they stood at the conclusion of the resumed hearing. Although the petitions for the writ of habeas corpus were not filed by the arrestees but on their behalf by their attorneys, we shall occasionally refer to them as "petitioners" or as "appellants".

## The Appeal of Carlson

Appellant was arrested in 1947 on a so-called alien deportation warrant, Immigration Act of October 16, 1918, and therein was charged with being an alien who, after entry, was found to be *a member of an organization* which believes in and advocates violence to overthrow the government of the United States. He was enlarged under bail. Because of the Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 decision, and after hearing sessions had been held, another charge was made by the issuance of a warrant under the amendment to the Immigration Act, the Internal Security Act of 1950. The 1950 amendment authorized (and the new warrant conformed) the deportation of an alien who *was, after entry, a member of the Communist Party* of the United States, as distinguished from the former statute which authorized deportation of an alien who *is a member of an organization* advocating overthrow of the government of the United States by force and violence.[3] The later warrant provided that appellant should be held without enlargement on bail. These proceedings stem from the latter warrant.

It is alleged in the petition that Carlson was born in Poland in 1913 and entered this country at the age of 6 years, has lived in California for the last 15 years, and prior to deportation proceedings had filed his application for citizenship; he is married and is the father of two California-born minor children; there is no basis for fearing that he will commit any act detrimental to the United States should he be freed on bail; the deportation proceedings are liable to continue for many months; he will hold himself in readiness to appear at hearings on the warrant, and he has responded at all hearings on the warrant of 1947 while at liberty under bail.

The Director's return to the order to show cause and which was prior to the remand, contained allegations: That Frank Carlson was not being illegally restrained of his liberty; he was in custody pursuant

---

3. Compare Title 8 U.S.C.A. § 137, as amended by the Act of September 23, 1950, c. 1024, Title I, § 22, 64 Stat. 1008, with Title 8 U.S.C.A. § 137, as amended by the Act of June 28, 1940, c. 439, Title II, § 23, 54 Stat. 673.

to a warrant of arrest dated October 31, 1950, issued under authority of the Attorney General, directing that petitioner be taken into custody and granted a hearing to enable him to show cause why he should not be deported in conformity with law; that there was reasonable cause to believe that if he were enlarged on bail he would engage in activities prejudicial to the interest and safety of the United States.

After the remand the court issued the writ, and in a return thereto it is alleged in substance: That Carlson is restrained of his liberty in respondent's custody under proper and lawful authority; that he is a native and national of Poland, born at Kosow, Galicia, Poland, on or about March 6, 1913; that a warrant for the said petitioner's arrest was issued on October 28, 1947, charging that he was subject to deportation under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137; that he was taken into custody on the warrant on November 3, 1947, and on November 5, 1947, was released on furnishing bail; that hearings were conducted; that the record was returned for hearings de novo because of Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; that on September 26, 1950, the Commissioner in charge of Immigration in Washington, D. C., under the Attorney General, requested a report on all aliens in the Los Angeles district who were *currently* active members of the *Communist Party;* that on October 6, 1950, the Director submitted the report containing summaries of facts as reflected in the confidential and official records of the Government at Los Angeles in the cases of eleven aliens indicated to be currently active members of the Communist Party, and in the cases of eight aliens indicated to be past members of the Communist Party, which report recited facts tending to establish that Carlson was one of the eleven currently active members of the Communist Party; that on October 21, 1950, instructions were received by the Director from the Attorney General directing the immediate apprehension and detention of Carlson; this direction was conformed to on the 21st of October, 1950; that on October 27, 1950, the radiogram set out in the margin was received by the Director in Los Angeles from the Attorney General[4]; that a new warrant of arrest was issued October 31, 1950, superseding the warrant of 1947 [hereinbefore mentioned]; that attached to the return is Exhibit "B" consisting of an amended affidavit of the Director. We hereinafter detail the attached exhibit and affidavit. It is alleged that the Attorney General has carefully considered facts which in his judgment establish that the said petitioner is a currently active member of the Communist Party engaged in the execution of the program of the Communist Party, the central purpose of which is to subvert the existing government of the United States indirectly by espionage and sabotage and directly by force and violence and to substitute a totalitarian dictatorship committed to the destruction of individual liberty and private property; and that, moreover, said facts cause the said Acting Commissioner (Attorney General) to believe that if the said petitioner were enlarged on bail he would engage in activities which would be prejudicial to the

4. Radiogram: "For Your Information and That of United States Attorneys and Aliens and Their Attorneys the Instruction to You of October Twenty First to Take Into Custody and Detain the Alien Communists Was Issued Only After the Cases Had Been Examined in the Light of the Internal Security Act of Nineteen Fifty and the Spirit and Intention Thereof and All of the Factors Concerning the Likelihood of the Deportability and the Activities of Said Alien Had Been Given Careful Consideration As Well As the Factors of Undue Hardship Which Continued Detention Might Impose Stop As You Have Already Been Instructed the Hearings and Steps Towards Disposition of These Cases Are To Be Given Top Priority Stop Also As You Have Been Advised These Aliens Were Ordered Detained By Authority of the Attorney General Delegated To Me By Section Nine Zero Point One of Title Eight Cfr Paren Twelve Fr Five Zero Seven Two July Thirty One Nineteen Forty Seven Paren Under Section Thirty Seven of the Alien Registration Act of Nineteen Forty Comma Eight USC Four Five Eight."

public interest, and would endanger the welfare and safety of the United States.

The Director's affidavit referred to states in substance: That he is custodian of the records of the United States Immigration and Naturalization Service in Los Angeles district; that with respect to Frank Carlson, the petitioner herein, the Service is in possession of evidence showing that said petitioner has been and still is a member of the Communist Party of the United States and has and is actively participating in the execution of its program for a world-wide revolution and the establishment of a Communist totalitarian dictatorship in the countries throughout the world; more specifically, that said petitioner has admitted membership in the Young Communist League, a Subsidiary, Branch, and Affiliate of the Communist Party of the United States; that petitioner is an admitted member of the Communist Party of the United States of America having joined it about 1932; that petitioner was editor of the "Young Worker", official organ of the Young Communist League of the United States of America; that he was a member of the National Executive Committee of the Young Communist League; that he was the secretary and president of the Young Communist League of California; that in 1945 he admitted membership in the Communist Party and stated that he believed in its program and that he had been an active member thereof for fifteen years; that during the latter part of 1946 until about the summer of 1947 the petitioner was state secretary of the Communist Party of the United States for the State of Wisconsin; that in 1949 petitioner caused to be published in "Our Times" (a weekend supplement of the "Daily People's World", West Coast organ of the Communist Party) an article entitled "I Demand Citizenship" in which he stated that he· was a member of the Communist Party; that in September, 1949, he headed the Marxist Institute in Los Angeles; that on September 4, 1950, he was present at the meeting of the Civil Rights Congress in Los Angeles, California, (an organization designated by the Attorney General as Communist, F.R. 315, No. 231); that in writing for the "Daily People's World" (official West Coast organ of the Communist Party of the United States of America), November 10, 1950, issue, he stated among other things in an article entitled "They Can't Deport You", "I told them I am a Communist;" said issue of the "Daily People's World" is attached to, and incorporated as part of, this exhibit; that said petitioner is presently the Los Angeles County Educational Director for the Communist Party of the United States; that in connection with his deportation hearing at Los Angeles, California, on September 7, 1950, the petitioner refused to answer questions concerning his membership in the Communist Party on the grounds of self-incrimination; that the Service records show with respect to petitioner's hearings under Service Warrant of arrest that the case was first set for hearing on November 21, 1950, and continued to November 28, 1950, on motion of petitioner's counsel. On the latter date, the case was again continued on motion of petitioner's counsel to January 3, 1951. On the latter date on the motion of petitioner's counsel, it was again continued to February 16, 1951.

Attached to and made a part of the amended Exhibit "B" are two photostat sheets of "Our Times" dated November 10, 1950. The first sheet consists of an article most highly praising Communist China with editorial comment. The next sheet is the article allegedly written by Appellant Carlson. The first sheet shows the nature of the publication. The second sheet mirrors Appellant Carlson as strongly Communistic. Carlson's alleged Communistic activities, as set out in the return and affidavit, are not denied.[5]

The Director argues that his return, as supplemented by the affidavit, is sufficient under our Carlson opinion, 1950, 186 F.2d 183, to show that discretion was used in denying bail to Carlson, and that the determination to deny him bail was reasonable and not arbitrary or capricious.

5. The general comment from this point to the subtitle "The Appeal of Stevenson" applies to each appellant.

The appellant argues that there is no such showing under the theory of the Carlson opinion. In approaching this question we are reminded of the fact that appellant bears heavily in his argument upon our likening the required showing of fact upon which the discretion of the Attorney General shall be based, to the showing required in a preliminary examination before a magistrate in an arrest for crime. He argues that, so measured, the showing by the Attorney General is insufficient. The analogy is not perfect and was used merely to illustrate the principle that American jurisprudence abhors the imprisonment of any human being without a public justification therefor.

No person who entertains opposition to established government has a right to attempt or to incite its change or destruction by force and violence, any more than he has the right to take the law into his own hands under any other grievance. We have in our scheme of government made change relatively easy, once the majority wants it, and any person who takes what is sometimes expressed as *Direct action* (outside of law) is an enemy of the state and of every person in it.

The basic principles of our government that the individual shall be free to speak, free to publish, free to worship, free to be personally unrestrained, are not absolute. It would be an anomalistic use of the term "government" to apply it to a state organization which is without the power to resist its own violent destruction. It is said by appellant that there is no proof here as to the intention of the Communist Party of the United States or of Communists to maim or destroy our government by force and violence, and cites the Schneiderman case (Schneiderman v. United States), 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. The Schneiderman case was of yesterday. As Justice Hughes one time so expressively said, "Courts do not function in a vacuum." The courts today are acquainted with current history and, too, with the legislative findings set out in the Internal Security Act of 1950, from which we quoted liberally in the first Carlson opinion.

The existence as of today of a world-wide conspiracy against free democratic government by a major world power using as its vehicle the establishment of Communism by force and violence, is perfectly clear and incontrovertible.

The Attorney General is charged with the gravest responsibility. He is by law ordered to deport aliens who are or have been members of the Communist Party since their entry. The judiciary has no right to interfere with that duty, though it must be alert to strike down all arbitrary action.

The district court in the case of Carlson was shown that the Attorney General did submit the evidence furnished him to his considered discretion. The evidence included the professed presently existing status of a "Red" as to Carlson specifically; evidence of leadership in Communistic organizations; evidence of admitted membership in the Communist Party as late as 1945; evidence that appellant wrote and had published in a recent publication an article entitled "They Can't Deport You". This article most strongly points to Appellant Carlson as a present militant Communist. And we may add that the title page to the publication contains an article which treats Communism as a doctrine of liberation, and in the most nauseating manner treats the United Nations' condemned aggressor, Communist China, which is now engaged in killing Americans and other Nationals, as an enlightened advance of a people's civilization. There is a marked difference between the showing made at the first hearing before the district court, and the showing made after the remand.

### The Appeal of Stevenson

The proceedings as to Appellant Stevenson follow the pattern detailed hereinbefore as to Appellant Carlson. We take the personal history of this appellant as set up in her petition for issuance of the writ, from our former opinion and order reversing and remanding as of December 20, 1950, 186 F.2d 190, as follows:

"Petitioner Stevenson was born in England in 1907. At the age of 12 years she was taken to Canada with her family. She

entered the United States in 1923 and since has resided in Los Angeles, California. With her mother she visited Canada in 1928 for a few hours and later in the same year she went to Mexico for a few hours where she was married to a United States citizen. In 1929 she made inquiry of the Immigration and Naturalization Service as to [her] applying for citizenship but her legal entrance into this country was questioned."

The return filed in the earlier proceedings, prior to the remand, contained allegations in substance as follows: That petitioner Stevenson was not being illegally restrained of her liberty; that she was in custody pursuant to warrant of arrest dated October 31, 1950, issued under authority of the Attorney General, directing that the petitioner be taken into custody and granted a hearing to enable her to show cause why she should not be deported in conformity with law; that there was reasonable cause to believe that if said petitioner were enlarged on bail she would engage in activities which would be prejudicial to the public interest, and would endanger the welfare and safety of the United States.

The return filed by the Director after the remand alleged in substance: That petitioner Stevenson is not being illegally restrained by respondent of her liberty; that she is a native and subject of Great Britain, born at London England, on or about August 26, 1907; that a warrant for said petitioner's arrest was issued by authority of the Attorney General on July 8, 1949, charging that she was subject to deportation under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137; that said petitioner was taken into custody on the aforesaid warrant of arrest on July 26, 1949, and on the same date was released from custody on a delivery bond in the sum of $2,000; that, after a hearing on said warrant of arrest, in order to give the petitioner an opportunity to show cause why she should not be deported, a hearing de novo under the Administrative Procedure Act was ordered as a result of the decision of the Supreme Court in the case of Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; that on September 26, 1950, the Attorney General requested the Director to submit a report covering all aliens in the Los Angeles district who were currently active members of the Communist Party and who were under deportation proceedings on charges under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137; that on October 6, 1950, the District Director of Immigration and Naturalization, Los Angeles, California, submitted to the Attorney General a report containing summaries of facts as reflected in a confidential and official records of the Government at Los Angeles in the cases of eleven aliens indicated to be currently active members of the Communist Party, and in the cases of eight aliens indicated to be past members of the Communist Party, all of whom were the subjects of pending deportation proceedings under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137, which report recited facts tending to establish that the aforesaid petitioner was one of the said eleven currently active members of the Communist Party, some of which facts are recited in respondent's affidavit which is attached as a part of the return; that on October 21, 1950, instructions were received by the Director from the Attorney General directing the immediate apprehension and detention of " * * * all active Communists under proceedings in your district unless detention would result in severe hardship because of individual's physical condition or family situation. * * *."; that pursuant to the aforesaid instructions the petitioner was taken into custody on October 24, 1950, on the aforesaid warrant of arrest issued July 8, 1949; that on October 27, 1950, the radiogram quoted in footnote (4), supra, was received by the Director in Los Angeles from the Attorney General; that on October 31, 1950, while said petitioner continued in custody under the warrant of arrest issued on July 8, 1949, a new warrant of arrest was issued by authority of the Attorney General charging that she was subject to deportation under the Act of October 16, 1918, as amended by the Internal Security Act of 1950, 8 U.S.C.A. § 137, and served upon petitioner, which said warrant of arrest of October 31, 1950, superseded the said war-

rant of arrest issued on July 8, 1949; a copy of which warrant of arrest of October 31, 1950, is attached as a part of the return; that pursuant to outstanding instructions from the Attorney General the case of petitioner has been given first priority in expediting hearing, to the end that said case may be disposed of as speedily as possible, but delay has been encountered from counsel for petitioner; that the Attorney General has exercised his discretion to take said petitioner into custody and to continue her in custody without bail pending final determination of her deportability, and in exercising said discretion to detain said petitioner without bail the Attorney General has carefully considered facts which in his judgment establish that the petitioner is a currently active member of the Communist Party engaged in the execution of the program of the Communist Party, the central purpose of which is to subvert the existing government of the United States indirectly by espionage and sabotage and directly by force and violence and to substitute a totalitarian dictatorship committed to the destruction of individual liberty and private property; and that, moreover, said facts cause the Attorney General to believe that if said petitioner were enlarged on bail she would engage in activities which would be prejudicial to the public interest, and would endanger the welfare and safety of the United States—which findings the Attorney General has communicated to the Director.

The affidavit of the Director contains allegations in substance as follows: That he is the Director and as such is custodian of the records of the United States Immigration and Naturalization Service in said district; that with respect to petitioner Stevenson the Service is in possession of evidence showing that she has been a member of the Communist Party of the United States and has actively participated in its program; more specifically that the petitioner was a Unit Organizer and a member of the Hollywood Subsection Committee of the Communist Party in 1936; that she was the Secretary of a Communist Party Unit in 1938; that she participated in the "Lenin" celebration in Los Angeles; that she admitted in 1948 attending Communist Party meetings and also admitted membership in the American League for Peace and Democracy (an organization designated by the Attorney General as Communist, F.R. 315, No. 231); that she was a correspondent of the People's Educational Center in 1948 (an organization designated by the Attorney General as Communist, F.R. 315, No. 231); and that in 1950 at a deportation hearing she refused to answer questions concerning her membership in the Communist Party on the ground of self-incrimination; that the Service records show with respect to petitioner's hearings under Service Warrant of Arrest that there have been undue delays in hearings thereunder, that the first case was scheduled for hearing on November 30, 1950, but was taken off calendar at request of petitioner's counsel; that it was next set for hearing on December 6, 1950, and continued on motion of petitioner's counsel; that it was again set for hearing on December 11, 1950, and again continued to December 14, 1950, on motion of petitioner's counsel; that on the latter date the case was again continued on motion of petitioner's counsel to December 15, 1950; and that on the last mentioned date it was again continued on motion of petitioner's counsel and set for hearing January 5, 1951.

### The Appeal of Hyun

The proceedings as to Appellant Hyun follow the pattern detailed hereinbefore as to Appellant Carlson. We take the personal history of this appellant as set up in his petition for issuance of the writ, from our former opinion and order reversing and remanding as of December 20, 1950, 186 F.2d 190, 191, as follows: "Petitioner Hyun was born in Seoul, Korea; is 33 years of age; was taken to Hawaii at an early age and resided there until December, 1947. His schooling resulted in a bachelor of science degree. In school he appears to have been a leader in social and religious activities. Although disqualified for military service during the late war because of his status as an alien, he became Captain of Reserve Officers Training Corps at the University of Hawaii. He has applied for citizenship; is married and has two minor

sons. He has resided in Los Angeles, California, since December, 1947, and has engaged in a useful occupation. Petitioner's petition is replete with a detailed account of his life."

The Director's return to the writ issued after remand is much like that recited in the Carlson case. It definitely alleges that Appellant Hyun is currently active as a Communist. To the return is attached an affidavit by the Director and made a part thereof. We quote from the affidavit: "* * * with respect to David Hyun, the petitioner herein, the Service is in possession of evidence showing that said petitioner has been a member of the Communist Party and has actively participated in its program; more specifically, that said petitioner was a member of the Communist Party in the Territory of Hawaii and was instrumental in reactivating the Communist Party in Hawaii in 1945; that he led and participated in discussion groups on indoctrination of Communist philosophy, planning, strategy, and recruitment of members in the Communist Party during the years 1946 and 1947; that he advocated redistribution of wealth and government ownership of industry, such as exists in Russia, and that these reforms would take place following the revolution in the United States; that said petitioner was instrumental in forming a Branch of the Hawaiian Civil Liberties Committee on the West Coast soon after his arrival in California from Hawaii in 1947 (an organization designated by the Attorney General as Communist, F.R. 315, No. 231) ; that he was Educational Director of the Westlake Section of the Communist Party in Los Angeles, California, in 1949."

### The Appeal of Carlisle

The proceedings as to Appellant Carlisle follow the pattern detailed hereinbefore as to Appellant Carlson. We take the personal history of this appellant as set up in his petition for issuance of the writ, from our former opinion and order reversing and remanding as of December 20, 1950, 186 F.2d 190, 191, as follows: "petitioner Carlisle was born in England in 1897 and has resided in Los Angeles, California, for the past 15 years."

It was alleged in the return filed in the earlier proceedings, prior to the remand, in substance as follows: That Appellant Carlisle was not being illegally restrained of his liberty; that said petitioner is in the Director's custody pursuant to a warrant of arrest dated October 31, 1950, issued by authority of the Attorney General, directing that petitioner be taken into custody and granted a hearing to enable him to show cause why he should not be deported in conformity with law; that there was reasonable cause to believe that if said petitioner were enlarged on bail he would engage in activities which would be prejudicial to the public interest, and would endanger the welfare and safety of the United States.

The return filed by the Director after the remand contained allegations in substance as follows: Appellant is not being illegally restrained by respondent of his liberty; that he is a native and subject of Great Britain, born at London, England, on or about September 23, 1897; that a warrant for said petitioner's arrest was authority of the Attorney General on June 13, 1950; charging that he was subject to deportation under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137; that he was taken into custody on the aforesaid warrant of arrest on June 16, 1950, and on June 19, 1950, was released from custody on a delivery bond in the sum of $5,000; that, after a hearing on said warrant of arrest to give said petitioner an opportunity to show cause why he should not be deported, a hearing de novo under the Administrative Procedure Act was ordered as a result of the decision of the Supreme Court in the case of Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; that on September 26, 1950, the Acting Commissioner of Immigration and Naturalization under the Attorney General at Washington, D. C., requested the Director at Los Angeles, California, to submit a report covering all aliens in the Los Angeles district who were currently active members of the Communist Party and who were under deportation proceedings on charges under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137; that on October 6, 1950, the Director submitted a re-

port containing summaries of facts as reflected in the confidential and official records of the Government at Los Angeles in the cases of eleven aliens indicated to be currently active members of the Communist Party, and in the cases of eight aliens indicated to be past members of the Communist Party, all of whom were the subjects of pending deportation proceedings under the Act of October 16, 1918, as amended, 8 U.S.C.A. § 137, which report recited facts tending to establish that the aforesaid petitioner was one of the said eleven currently active members of the Communist Party, some of which facts are recited in respondent's affidavit attached as a part of the return; that on October 21, 1950, instructions were received by the Director from the Attorney General directing the immediate apprehension and detention of Carlisle; that pursuant to the aforesaid instructions he was taken into custody on October 21, 1950, on the aforesaid warrant of arrest issued on June 13, 1950; that on October 27, 1950, the radiogram set out in footnote (4), supra, was received by the Director in Los Angeles from the Attorney General; that on October 31, 1950, while said petitioner continued in custody under the warrant of arrest issued on June 13, 1950, a new warrant of arrest was issued charging that appellant was subject to deportation under the Act of October 16, 1918, as amended by the Internal Security Act of 1950, 8 U.S.C.A. § 137, and served upon said petitioner, which said warrant superseded the June 13, 1950, warrant; that pursuant to the Attorney General's instructions the case of petitioner has been given first priority to the end that it may be speedily heard; that the attorney General has exercised his discretion to continue appellant in custody without bail pending final determination of his deportability, and in exercising said discretion to detain him without bail the Attorney General has carefully considered facts which in his judgment establish that the said petitioner is a currently active member of the Communist Party engaged in the execution of the program of the Communist Party, the central purpose of which is to subvert the existing government of the United States indirectly by espionage and sabotage and directly by force and violence and to substitute a totalitarian dictatorship committed to the destruction of individual liberty and private property; and that said facts cause the Director and the Attorney General to believe that if said petitioner were enlarged on bail he would engage in activities which would be prejudicial to the public interest, and would endanger the welfare and safety of the United States—which findings the said Attorney General has communicated to the Director.

The affidavit of the Director contains allegations in substance as follows: That he is the said Director and as such is custodian of the records of the United States Immigration and Naturalization Service in said district; that with respect to petitioner Harry Carlisle, the Service is in possession of evidence showing that said petitioner has been a member of the Communist Party of the United States and has actively participated in its program; more specifically, that in 1932 petitioner stated that he was in favor of the overthrow of the government of the United States and would go to any means to attain that end; that petitioner was a speaker at closed meetings of Communist Party functionaries in 1933; that in 1935 said petitioner was editor of the "Western Worker" (the then official Western organ of the Communist Party of the United States of America, Section of the Communist International); that in 1937 said petitioner was a member of the League of American Writers (an organization designated by the Attorney General as Communist, F.R. 315, No. 231); that in 1949 said petitioner was reported in the Press as speaker on Communist Party topics and activities; that in 1949 said petitioner was active in the affairs of the American-Russian Institute and was on its list of approved speakers (said organization has been designated by the Attorney General as Communist, F.R. 315, No. 231); that in August, 1950, said petitioner was a speaker at a meeting of the Civil Rights Congress in Los Angeles, California, (an organization designated by the Attorney General as Communist, F.R. 315, No. 231); that at hearings held in connection with deportation proceedings, petitioner refused to answer questions regarding his membership

in the Communist Party on the ground of self-incrimination; that the Service Records show with respect to petitioner's hearings under Service warrant of arrest that the case was first set for hearing on November 22, 1950, and upon motion of petitioner's counsel was continued to November 28, 1950; that on that date the case was again continued to December 13, 1950, on motion of petitioner's counsel; and that on the latter date it was again continued on motion of petitioner's counsel.

■ We are of the opinion and hold that the showing made by the Director's affidavits and returns, many of the salient features of which are undenied, constitutes evidence in support of the district court's holding that a sufficient showing had been made in support of the Director's refusal to enlarge any of the appellants on bail, and that the Attorney General did not abuse his discretion in his order to the Director denying bail to any of them.

■ We append some citations of authorities by way of a case note. They are by no means complete.[6] The authorities do, we think, clearly indicate that an important area of bail and habeas corpus law is viewed by the various federal courts in various lights. An alien presently in the United States may be intercepted and excluded if the Congress wills it. It has

---

6. Ex parte Perkov, D.C.Cal.1942, 45 F. Supp. 864, application of Eighth Amendment to deportation proceedings; Principe v. Ault, D.C.Ohio 1945, 62 F.Supp. 279, power of court to admit to bail in deportation cases; United States ex rel. Zapp v. District Director of Immigration and Naturalization, 2 Cir., 1941, 120 F.2d 762, expulsion of aliens is a legislative function; United States ex rel. Carapa v. Curran, 2 Cir., 1924, 297 F. 946, 36 A.L.R. 877, bail in deportation proceedings is a matter of statute; American Communications Association v. Douds, 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, findings of Congress may permissibly be used to assist in the interpretation and application of legislation; United States ex rel. Potash v. District Director of Immigration and Naturalization, 2 Cir., 1948, 169 F.2d 747, factors to consider in deciding whether bail shall be allowed; United States ex rel. Pirinsky v. Shaughnessy, 2 Cir., 1949, 177 F.2d 708, amount of bail; In re Lum Poy, C.C.D.Mont.1904, 128 F. 974, Chinese held for deportation under exclusion Act bailable; Chin Wah v. Colwell, 9 Cir., 1911, 187 F. 592, order denying bail in Chinese deportation proceedings affirmed; United States ex rel. Bauer v. McGrath, D.C.N.Y.1949, 87 F.Supp. 698, bail after alien held deportable; United States v. Fah Chung, D.C.S.D.Ga.1904, 132 F. 109, Chinese not entitled to bail as a matter of right after final order of deportation; Williamson v. United States, 2 Cir., 1950, 184 F.2d 280, Communists convicted of conspiring to advocate and teach the violent overthrow of the United States government held bailable pending appeal;
  In United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, the court stated at page 543, 70 S.Ct. 309, at page 312, 94 L.Ed. 317: "Thus the decision to admit or to exclude an alien may be lawfully placed with the President, who may in turn delegate the carrying out of this function to a responsible executive officer of the sovereign, such as the Attorney General. The action of the executive officer under such authority is final and conclusive. Whatever the rule may be concerning deportation of persons who have gained entry into the United States, it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."
  At page 544 of 338 U.S., at page 313 of 70 S.Ct. the court states: "In the particular circumstances of the instant case the Attorney General, exercising the discretion entrusted to him by Congress and the President, concluded upon the basis of confidential information that the public interest required that petitioner be denied the privilege of entry into the United States. He denied her a hearing on the matter because, in his judgment, the disclosure of the information on which he based that opinion would itself endanger the public security."
  At page 548 of 338 U.S., at page 315 of 70 S.Ct. in a footnote to the dissenting opinion by Justice Frankfurter, it is stated: "The Attorney General is to act on information that satisfies him, but not only is there no opportunity for a hearing, but the Attorney General can lock in his own bosom the evidence that does satisfy him * * *." Justice Jackson, with Justice Black, also dissented.

willed it with certain conditions which must be concluded after a hearing. The Attorney General has the discretion to grant or deny bail after the alien has been arrested and prior to the required hearing. We reason that such discretion carries with it the usual requirements that it shall not be exercised arbitrarily or capriciously, and that the courts through the exercise of the writ of habeas corpus have the power to test whether or not the decision has a reasonable basis in relevant facts. We are fully cognizant of the fact that a large part of the allegations in the Director's return and the statements in his affidavits would not constitute evidence in a criminal case nor at the deportation hearings. To prove such allegations and statements foundations, of course, would have to be laid. However, the issue here, as we have tried to make clear, is not the guilt or innocence of the appellant-petitioners, nor must it be taken from what we have said that the district court has the power to substitute its discretion for that of the Attorney General. The issue before the district court was whether, after viewing the whole case as to each appellant-petitioner, it could be found that the Attorney General abused his discretion in denying bail.

In the cases in suit the district court weighed the evidence in the light of the times and, we think, came to the correct and legal conclusions. As to each appellant the judgment is affirmed.

Affirmed.