### CARLISLE v. LANDON, District Director of Immigration and Naturalization Service.

No. 13878.

United States Court of Appeals
Ninth Circuit.

June 26, 1953.

Stanley Fleishman and Esther Shandler, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., and Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BONE, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

This appellant is the same Harry Carlisle who unsuccessfully appealed from a judgment denying his petition for writ of habeas corpus in Carlisle v. Landon, 9 Cir., 187 F. 2d 991, and which judgment was affirmed in Carlson v. Landon, 342 U.S. 524, 72 S. Ct. 525, 96 L.Ed. 547. Now, as at the times stated in those former proceedings, he is being detained by appellee Landon, as District Director of the Immigration and Naturalization Service, as an alien charged with being deportable as a member of the Communist Party. He was arrested on May 18, 1953, and is being held without bail, upon direction of the Attorney General. Following that arrest he filed this present petition for a writ of habeas corpus in the court below. An order to show cause was issued, and after return thereto by appellee as respondent, which was put in issue by a traverse, a hearing was had. Judgment was that the appellant's detention was lawful, as "a reasonable exercise of

the discretion of the Attorney General", and that the petition for the writ be denied. He has filed notice of appeal from that judgment, applied to the district court to be allowed bail pending his appeal, and following that court's denial, has now presented to us his motion for bail pending appeal.

The history of what has transpired as between Carlisle and the Immigration and Naturalization Service since the decision of the Supreme Court against him on March 10, 1952, is as follows: About October 6, 1952, upon Carlisle's appeal from an order of the Commissioner directing his deportation, that order was reversed by the Bureau of Immigration Appeals and the case remanded for further hearings. On October 7, 1952, he was released on bond in the sum of $5,000 and remained at liberty until the May 18, 1953 arrest and detention of which he now complains.

About February 9, 1953, Carlisle was notified that he would be required to procure a new bond, which specified conditions to which he objected.[1] On February 19, 1953, he brought an action against the District Director for declaratory judgment with respect to the demanded bond, and for a temporary injunction restraining the defendant from requiring its execution. That action was similar to the one brought by Yanish in the Northern District of California, and described by Mr. Justice Douglas in his opinion in the later case of

Yanish v. Barber reported in 73 S.Ct. 1105. But in response to this action by Carlisle, in contrast to the position taken by the defendant in the Yanish injunction suit, the defendant District Director expressly stipulated that no new bond would be required pending the disposition of the action. The court denied a motion to dismiss that action holding that upon the facts alleged in the complaint the defendant could not demand the new bond. Before any further steps were taken the District Director received from the Commissioner of Immigration and Naturalization a telegraphic direction to the effect that Carlisle's bond should be revoked and he should be taken into custody "in order to meet the responsibility imposed upon the Service by § 242(a) and (c)[2] for the conduct, associations and activities of the aliens." Appellant was thereupon arrested and his detention has been pursuant to that direction and a further telegraphic direction from the Commissioner of June 1, 1953, to "revoke bond Harry Carlisle, take into custody, and detain without bond pending determination of deportability."

It thus appears that the Commissioner and the District Director have abandoned any demand for a new bond, and are holding appellant in custody pursuant to the provisions of § 1252(a) of Title 8, (quoted in footnote 2, supra) that "Any such alien taken into custody may, in the discretion of the Attorney General and pending such final

---

1. Such, for instance, that he shall "terminate and remain disassociated from membership in * * * the Communist Party. * * * "

2. The reference is to § 242 of the Immigration and Nationality Act of 1952, which is § 1252 of Title 8 U.S.C.A. Subsection (a) thereof is as follows: "(a) Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attor-

ney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

determination of deportability, (1) be continued in custody; or (2) be released under bond * * *. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability."

It is to be noted, also, that there is no issue made here as to whether the Attorney General is "proceeding with reasonable dispatch", and no claim that appellant is entitled to the writ on any such ground.[3]

Evidently upon the theory that he may make this application to us by proceeding in the manner prescribed in Rules 46(a) and 38(c), Rules of Criminal Procedure, 18 U.S.C.A., appellant first made application to the district court for admission to bail pending appeal, and now presents this motion to us, setting forth that the case presents a substantial question.

The contention is that notwithstanding it was finally adjudged by the Supreme Court in Carlson v. Landon, supra, that Carlisle was then lawfully held without bail, yet since thereafter the representatives of the Attorney General have permitted him to be enlarged upon bail, the attempted revocation of that bail and rearrest of the appellant in May, 1953, would have to be justified by a new showing of facts as specific as would be required initially to sustain the Attorney General's discretion to deny bail under the rule laid down in the first Carl-son case, Carlson v. Landon, 9 Cir., 186 F. 2d 183.[4] Appellant contends that the return filed in the court below in response to the order to show cause made no such showing, and that no effort was made by the appellee upon the hearing below to make any such disclosure. The trial court in its findings and opinion below stated that it took judicial notice of the court's own files and records in the earlier case of Carlisle v. Landon which included the opinions and mandates of this and the Supreme Court, and found that since the record in that case showed sufficient facts to justify the Attorney General's decision to hold Carlisle without bail, he may continue to hold him now "under the warrant which initiated the proceedings". Appellant says that this is not enough, and that therefore the record here discloses a substantial question which should be determined by this court.

At such time as appellant may perfect his appeal to this court and the cause is submitted to us upon briefs and oral argument, we shall of course have occasion to consider any question raised by the record, including the one just stated. But in determining upon this motion whether this appellant should now be enlarged upon bail through action of this court, we are not reviewing, as for correction of errors, any action taken by the court below. It is true that as a condition precedent to appellant's motion before us he must first seek bail pending appeal from the trial court. He has satisfied that condition, but under any applicable rule the present motion

---

**3.** An affidavit of the District Director, hereafter mentioned, discloses that a final order of deportation was made by the Commissioner December 18, 1951; appellant's appeal to the Board of Immigration Appeals was dismissed September 24, 1952, but on motion of appellant the hearing was by that Board ordered reopened for hearing to permit appellant's counsel to cross-examine an adverse witness; that the reopened hearing began in January, 1953 and was continued at appellant's request until March 9, 1953; and subsequent continuances were granted from time to time, all at appellant's request, the last continuance being to June 1, 1953. None of these statements have been questioned.

**4.** Subsequent to the decisions of this court in that case and in Carlisle v. Landon, (usually cited as Carlson v. Landon, 187 F.2d 991), § 242(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252(a) (see note 2, supra), has added to the statutory provisions dealt with in our former decisions the new provision that "such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion * * *." The substance of the remainder of this section was a part of § 23 of the Internal Security Act of 1950.

is addressed to this court seeking our original action with respect to the question whether the applicant is presently entitled to be enlarged upon bail. Upon this motion there has been filed in this court by way of opposition to the application now presented to us, the affidavit of the appellee respondent made June 17, 1953, in which he sets out at length all of the same facts relating to Carlisle which were contained in the affidavit which this court summarized 187 F.2d at page 1001, and which we there held constituted a sufficient showing in support of the refusal to release Carlisle. The present affidavit now presented to us also contains a statement of additional facts occurring subsequent to the dates mentioned in the former affidavit. These, in substance, are that during the past two years Carlisle when not in detention has actively continued a course of conduct in respect to Communist activities substantially the same as the conduct which was set forth in the earlier affidavit which we had held substantial evidence to support the discretion exercised in denying bail. This portion of the affidavit is detailed and specific. In general it discloses that the conduct described in the earlier affidavit has continued until the present time.

The appellant argues that we cannot consider this affidavit; that since it was not presented to the trial court, it may not be considered by us upon this application. In making that contention appellant overlooks the capacity in which we are now acting. As we have stated above, we do not now sit for the purpose of reviewing action taken by the trial court.[5] We now consider this motion for the purpose of determining whether as of the present time appellant should be enlarged upon bail. Indeed, the appellant when he made this motion before us, must have recognized this fact for he himself attached to his motion in support thereof, an affidavit of one of his counsel in which it is set forth as reason for the exercise of our alleged discretion to grant bail, that he is in bad health. (This claim with respect to his health, not previously suggested in this case, is denied in detail in the district director's affidavit previously mentioned.)

What we have said with respect to the manner in which this motion comes before us and the matters which we may consider on such an application, was clearly set forth by Mr. Justice Jackson at the time he was considering as a Circuit Justice the application of the defendants in the original Smith Act case for bail pending petition for certiorari. Williamson v. United States, 2 Cir., 184 F.2d 280, 282. There he said, (note 6, p. 282): "I think the rule clearly contemplates consideration of such matters, because, as it expressly provides, 'The court or the judge or justice allowing bail may at any time revoke the order admitting the defendant to bail.' Of course there are cases where, after allowance, decision of the contested question will remove it from the category of substantial. But power to revoke is not confined to such cases. I think any changed or newly discovered circumstance that affects the justice of the confinement may be considered."

The provisions of § 1252(a) of Title 8, supra, to the effect that an alien such as this appellant may, under the conditions there stated, "be continued in custody", and that if released under bond or parole, "such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion," is not only an authorization to the Attorney General but it is a direction to and limitation upon the powers of the courts. It is directed as much to us as it is to the district court.

In what we have just said it is assumed that as a court we have jurisdiction to entertain the present motion. It is evidently the appellant's theory that this is like other cases involving the allowance of bail pending an appeal to this Court for appellant has adopted the procedures specified in

5. The appeal here is "from the order dismissing the petition for a writ of Habeas Corpus". There is no attempt to appeal from the district court's denial of bail pending appeal. See the court's speculation upon the possibility of such an appeal in York ex rel. Davidescu v. Nicolls, 1 Cir., 159 F.2d 147, 148, and in United States ex rel. Bartsch v. Watkins, 2 Cir., 175 F.2d 245, 247.

Criminal Rules 46(a) and 38(c). What we have previously said discloses that, assuming the applicability of such procedures, and our power to act thereunder, we have indicated that the showing before us is such as to prevent our granting this application.

We think, however, that the Criminal Rules mentioned have no application here, first because the petition for writ of habeas corpus is a civil and not a criminal proceeding, and second, because the subject is specifically covered by Supreme Court Rule 45, 28 U.S.C.A. relating to the custody of prisoners pending a review of proceedings in habeas corpus, and by our Rule 29 which in substance is the same. At the argument before us there was considerable discussion of the question whether the case came within Rule 45(1) or Rule 45(2). These portions of Rule 45 provide: "1. Pending review of a decision refusing a writ of habeas corpus, the custody of the prisoner shall not be disturbed. 2. Pending review of a decision discharging a writ of habeas corpus after it has been issued, the prisoner may be remanded to the custody from which he was taken by the writ, or detained in other appropriate custody, or enlarged upon recognizance with surety, as to the court or judge rendering the decision may appear fitting in the circumstances of the particular case."

In this case the trial court did not issue the writ but did make an order to show cause to which the respondent's return was filed. Appellant argues that subdivision 1 of Rule 45 should not apply because the court below heard testimony and had a full dress hearing at which witnesses testified and evidence was taken and then proceeded to make formal findings. In such a case, appellant argues, the case must be considered as if the writ had first been issued and was afterward discharged, for other-wise, he says, appellant would lose the substantial rights he would have under part 2 of the Rule. He bases his argument upon what was said by the Supreme Court in Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.

We find it unnecessary to consider whether the case just cited requires us to treat the case as though the writ had been issued and then discharged, for the reason that all the courts which have had occasion to pass upon the question hold that Rule 45(2) refers exclusively to the trial court and gives no power to this court to enlarge the appellant upon bail. Such was held in United States ex rel. Thomas v. Day, 2 Cir., 29 F.2d 485, 487, and in York ex rel. Davidescu v. Nicolls, 1 Cir., 159 F.2d 147. This court so held in Yanish v. Barber, 9 Cir., 1953, 203 F.2d 673. It is true that in Yanish v. Barber, reported in 73 S.Ct. 1105, a decision which refers to the last cited case, Mr. Justice Douglas held that he, as a Supreme Court Justice, could admit the applicant to bail in that case. As we have noted, the facts of that case were quite different from the one before us. But the question to which we now address our attention is not whether a Supreme Court Justice may grant bail under Rule 45 which Mr. Justice Douglas answered affirmatively in Petition of Johnson, reported in 72 S.Ct. 1028, 96 L.Ed. 1377, and which Mr. Justice Jackson denied in Re Pirinsky, reported in 70 S.Ct. 232, 96 L.Ed. 1384.[6] Rather the question is as to *our* power in the premises.

The view which this court has previously entertained and which has been declared in the first and second circuits, is still our view. For this additional reason we hold that we may not grant the appellant's motion for bail.

Motion for bail denied.

6. In the Johnson case reference was made to Rule 45(4) which recites: "* * * and only where special reasons therefor are shown to this court will it disturb that order, or make any independent order in that regard." This refers to the Supreme Court. There is no corresponding reference to the Court of Appeals. Our Rule 29 contains no part 4.